INVICTUS RECORDS, INC., a Michigan Corporation; Holland-Dozier-Holland Productions, Inc., a Michigan Corporation; and Gold Forever Music, Inc., a Michigan Corporation, Plaintiffs,

v.

AMERICAN BROADCASTING COMPANIES, INC., a New York Corporation; ABC Records, Inc., a New York Corporation; ABC Record and Tape Sales Corp., a Delaware Corporation; ABC Recording Studios, Inc., a Delaware Corporation; ABC/Dunhill Music, Inc., a New York Corporation; GRT Corporation, a California Corporation; I. Martin Pompadour; Jay Lasker; Leonard Korobkin; Cary C. Harwin; Cary Harwin & Associates, a California Partnership; David M. Williams; Sanders, Tisdale, English, Tooks & Williams, a California Partnership; Dale M. Rozzen; George Greif; Greif-Garris Management, Inc., a California Corporation; Reginald Dozier; Leonard H. Goldenson; Elton A. Rule; Franklin Feinstein; James Reddick; Marvin William Krasilovsky; Andrew Feinman; Feinman & Krasilovsky, P.C., a New York Professional Service Corporation; Richard A. Kitch; Kitch & Suhrheinrich, P.C., a Michigan Professional Corporation; Lamont H. Dozier, individually and d/b/a Lamont Dozier Productions and LDR Productions; Bullet Proof Music, Inc., a California Corporation; Dozier Music, Inc., a California Corporation; McKinley Jackson; Otis Smith; and Arleen Schesel, Jointly and Severally, Defendants.

Civ. No. 75-71228.

United States District Court, E.D. Michigan, S.D.

Sept. 2, 1982.

Ulysses Boykin, Patmon, Young & Kirk, Detroit, Mich., for plaintiffs.

Barry King, Fitzgerald, Hodgman, Kazul, Rutledge, Cawthorne & King, P.C., William Hurley, Dice, Sweeney & Sullivan, Ernest Levin, Levin & Ungar, John Jacobs, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C., Detroit, Mich., for defendants.

## OPINION ON SUMMARY JUDGMENT

COHN, District Judge.

### I.

This is an antitrust case with pendent claims under Michigan law. Simply stated, Invictus Records, Inc., Holland-Dozier-Holland Productions, Inc. and Gold Forever Music, Inc. (plaintiffs) claim that beginning about 1972 defendants (described in detail below) conspired to drive them out of the "rhythm and blues" segment of the recorded music business.

### A.

The history of this action belies the simplicity of plaintiffs' general claim. The complaint was filed on July 1, 1975 and consisted of thirty-three single spaced pages. It was dismissed with leave to file an amended complaint on January 28, 1977 by the late Judge Lawrence Gubow, to whom the case was originally assigned. An amended complaint, currently pending, was filed by plaintiffs on May 6, 1977. The amended complaint as filed contained nineteen single spaced pages, named thirty-two defendants and alleged thirteen causes of action. Five defendants (Goldenson, Rule, Feinstein, Reddick and Schesel) were either dismissed by Judge Patricia Boyle on January 3, 1980 or have subsequently been dismissed or never served. The case was subsequently reassigned to my docket.

The twenty-seven remaining defendants may be identified and grouped as follows:

A. The "ABC defendants"

1. American Broadcasting Companies, Inc.

2. ABC Records, Inc.

3. ABC Record and Tape Sales Corporation

4. ABC Recording Studios, Inc.

5. ABC/Dunhill Music, Inc.

6. GRT Corporation—tape manufacturer and seller and a licensee of the other ABC corporate defendants.

7. I. Martin Pompadour—director and holder of various offices of the ABC corporate defendants from 1972–76.

8. Jay Lasker—director and president of ABC Records, Inc., ABC/Dunhill Music, Inc. and ABC Recording Studios, Inc. from 1970–75.

9. Leonard Korobkin—attorney and director and holder of various offices of the ABC corporate defendants, including vice-president for business affairs of ABC Records, Inc., from 1969–75.

10. Otis Smith—vice-president of plaintiffs who in 1973 returned to and in 1974 became a vice-president of ABC Records, Inc.

B. The "Dozier defendants"

1. Lamont Dozier—songwriter, producer and recording artist.

2. Bullet Proof Music, Inc.—music publishing company whose principal was Lamont Dozier.

3. Dozier Music, Inc.—music publishing company whose principal was Lamont Dozier.

4. Cary Harwin—principal of Cary Harwin and Associates, business agent for Lamont Dozier.

5. Cary Harwin and Associates—business agent for Lamont Dozier.

6. McKinley Jackson—musician and assistant to Lamont Dozier.

C. The "Kitch defendants"

1. Richard A. Kitch—attorney and president of law firm of Kitch and Suhrheinrich, P.C., attorneys for Lamont Dozier.

2. Kitch and Suhrheinrich, P.C.—attorneys for Lamont Dozier.

D. The "Krasilovsky defendants"

1. Marvin Krasilovsky—partner in law firm of Feinman and Krasilovsky, P.C., attorneys for Lamont Dozier.

2. Andrew Feinman—partner in same law firm.

3. Feinman and Krasilovsky, P.C.—attorneys for Lamont Dozier.

E. The "other" defendants

1. David Williams—partner in law firm of Sanders, Tisdale, English, Tooks & Williams, attorneys for Lamont Dozier.

2. Sanders, Tisdale, English, Tooks & Williams (the Sanders firm)—attorneys for Lamont Dozier.

3. Dale M. Rozzen—partner of Cary Harwin and Associates.

4. George Greif—principal of Greif/Garris Management, Inc., principal artist manager of Lamont Dozier.

5. Greif/Garris Management, Inc.—principal artist manager of Lamont Dozier.

6. Reginald Dozier—brother of Lamont Dozier, songwriter and producer.

Of the thirteen causes of action pleaded in the amended complaint, three (Counts V, X and XIII) and part of a fourth (Count XII) were dismissed by Judge Boyle. The claims which remain may be summarized as follows:

| COUNT | CLAIM | RELIEF | DEFENDANTS |
|---|---|---|---|
| I | Sherman Act § 1 Conspiracy in restraint of trade | Injunctive | All |
| II | Sherman Act § 1 Conspiracy in restraint of trade | Damages | All |
| III | Sherman Act § 2 Conspiracy to monopolize | Injunctive | All |
| IV | Sherman Act § 2 Conspiracy to monopolize | Damages | All |
| VI | Clayton Act § 7 Substantial lessening of competition | Injunctive/ Damages | All |
| VII | Lanham Act § 43(a) Intent to misrepresent articles in commerce | Damages | All |
| VIII | Michigan Anti-Restraint of Trade Statute, M.S.A. § 28.31 *et seq.* [M.C.L.A. § 445.701 *et seq.*] | Damages | All |
| IX | Michigan common law conspiracy | Damages | All |
| XI | Michigan common law unfair competition | Damages | All |
| XII | Michigan common law negligence | Damages | Krasilovsky, defendants, Kitch defendants, David Williams and the Sanders firm |

Counts I–IV, VI and VII are claims under federal law; Counts VII–IX, XI and XII are pendent state law claims.

### B.

The plethora of defendants and claims does not begin to describe the tortuous history of this case over the past seven years. Generally speaking, until mid-1981 this action proceeded down a series of lateral byways regarding service of process, motions to strike and for more definite statements and the order and conduct of discovery. By that time over 250 pleadings had been filed, including an interlocutory appeal by plaintiffs to the Court of Appeals for the Sixth Circuit which was dismissed for lack of jurisdiction.

It is fair to state that little or no progress toward resolving the substantive merits of the litigation was made until July 22, 1981. I then entered Pre-Trial Order No. 5, which (with undue optimism) set a trial date of July 1, 1982 and by working backwards set a detailed schedule for conducting depositions in California, Michigan, New York and Illinois, filing and answering final interrogatories and requests for production of documents, filing of motions for summary judgment, exhibits, exhibit lists, witness lists and proposed findings of fact and fashioning a joint pre-trial statement. Although the dates contained in Pre-Trial Order No. 5 have been somewhat modified (*see, e.g.*, Pre-Trial Order No. 8), that order has in large part controlled the subsequent history of this case.

That is not to say the last year has been without problems. Discovery was not completed before the filing and deciding of a flurry of motions requiring the entry of fifteen additional pretrial orders. Another interlocutory appeal was taken to the Court of Appeals by the senior partner of plaintiffs' counsel regarding the taking of his deposition; that appeal was eventually dismissed for lack of jurisdiction without opposition nine months after his deposition had been taken. After an evidentiary hearing, I entered Pre-Trial Order No. 11 limiting the exhibits plaintiffs could introduce in

their case-in-chief at trial as a Fed.R.Civ.P. 37 sanction for unexplained delay in discovery. Other pre-trial orders attempted to resolve or dispose of a variety of motions by all parties which resulted in over 425 docket entries in this case before the completion of discovery.

Despite these delays, the process I envisioned in Pre-Trial Order No. 5 finally resulted in all desired discovery being conducted. In addition to the limited and often-aborted discovery conducted before the entry of Pre-Trial Order No. 5, at least a score of depositions of parties and non-parties were taken by both sides in various cities in late 1981. The depositions were followed by a final wave of requests for production of documents and various motions to compel further answers to earlier discovery requests. The order of discovery, namely the taking of depositions before the final wave of documentary discovery, was requested by the parties because of prior failures by all parties (especially plaintiffs) to produce documents pursuant to earlier requests. It was believed conducting the depositions first would aid in identifying relevant documents and securing their production.

By late April 1982 discovery was finally completed. There is no claim by any party that any discovery has been refused or denied or that further discovery be conducted. The voluminous discovery materials consist of numerous sets of interrogatories propounded by plaintiffs and defendants, several requests for admissions and various lengthy requests for production of documents as well as a plethora of deposition transcripts and over 550 exhibits filed by plaintiffs for possible use at trial.

### II.

### A.

Now pending are motions for summary judgment, Fed.R.Civ.P. 56, which were filed by the Kitch defendants, the Krasilovsky defendants, the Dozier defendants and the ABC defendants after the completion of discovery in late April 1982. The only de-

fendants who have not moved for summary judgment are the six defendants listed as "other defendants" in Part I(A) above. As directed in Pre-Trial Order No. 8, each motion is accompanied by a statement of those material facts claimed to be undisputed in separately numbered paragraphs with supporting citations to the record, relevant portions of which are reproduced in accompanying appendices. The Krasilovsky defendants and Dozier defendants incorporate the Kitch defendants' motion and supporting materials by reference. Plaintiffs have responded to each motion as directed in a similar fashion with a listing of material facts in dispute and an accompanying appendix.

The motions and responses were referred to Magistrate Steven W. Rhodes for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B), who heard argument of counsel on May 21, 1982. The Magistrate filed his twenty-nine page Report and Recommendation on June 4, 1982. Plaintiffs objected to the report on June 15, 1982 in a relatively cursory and unspecific form. I then entered an order compelling compliance with 28 U.S.C. § 636(b)(1)(C) and Local Rule C–4(b), which require that objections to a Magistrate's Report and Recommendation refer specifically to that portion of the report objected to, and directed that plaintiffs file more specific objections accompanied by supporting citations to the record. Plaintiffs filed more detailed objections on June 28, 1982; the Kitch defendants and ABC defendants responded to the objections shortly thereafter.

Thus, now before me are the pending motions for summary judgment, a Magistrate's Report and Recommendation, plaintiffs' objections to the report and certain defendants' responses to the objections. For the first time in the seven-year history of this litigation, plaintiffs' legal claims are in a form with a proper record to be appropriately tested on their merits on summary judgment.

## B.

I have carefully considered plaintiffs' objections to the Magistrate's Report and Recommendation and the materials cited therein, as well as the responses and supporting materials cited by the various defendants. As required by 28 U.S.C. § 636(b)(1)(C), I have reviewed *de novo* those portions of the Magistrate's Report and Recommendation to which plaintiffs have objected as well as the related cited materials, including deposition transcripts and other discovery materials, affidavits, plaintiffs' proposed findings of fact and statements of material facts in dispute and the other relevant documents contained in the various appendices or filed by plaintiffs as potential trial exhibits.

I have determined to adopt the Magistrate's Report and Recommendation in its entirety. Specifically:

(1) The Kitch defendants' motion for summary judgment is granted and the amended complaint against them will be dismissed;

(2) the Krasilovsky defendants' motion for summary judgment is granted and the amended complaint against them will be dismissed;

(3) The Dozier defendants' motion for summary judgment is granted. While their motion as modified during the argument asks only that all reference to the "Wayne County litigation" (described more fully below) be stricken from the amended complaint, I will go beyond the motion and dismiss the amended complaint against them in its entirety; and

(4) the ABC defendants' motion for summary judgment is granted and the amended complaint against them will be dismissed.

Moreover, I have decided to go beyond the Magistrate's Report and Recommendation and dismiss the amended complaint against the six "other" defendants listed in Part I(A) above who have not moved for summary judgment; plaintiffs' motion for entry of a default judgment against three of those defendants will be denied.

### III.

■ I am well aware of the standards applicable to motions for summary judgment in this circuit. It is incumbent upon the movant to demonstrate that there is no genuine issue as to any material fact and that he is therefore entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence, consisting of all "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits" as well as exhibits and other materials noted in Part I(B) above must be viewed and all inferences must be drawn therefrom in the light most favorable to the party opposing the motion. *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently. *Watkins v. Northwestern Ohio Tractor Pullers Association,* 630 F.2d 1155, 1158 (6th Cir. 1980).

■ I am also keenly aware that summary judgment procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Nonetheless, *Poller* did not read Fed.R.Civ.P. 56 out of antitrust cases. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968). Where there are no issues of fact left for the trier of fact to determine, the moving party has the right to judgment even if intent and motive are involved. *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 69 (6th Cir.1982). · The party opposing the motion must place a material fact in issue by presenting facts of a substantial nature; it is not sufficient to rely on conclusions of law or mere suspicions. *Provenzino v. Merchants Forwarding,* 363 F.Supp. 168, 175 (E.D.Mich.1973).

As the court stated in *Searer v. West Michigan Telecasters, Inc.,* 381 F.Supp. 634, 643 (W.D.Mich.1974):

"It is true that summary procedures should be used sparingly in complex antitrust litigation. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473 (1962). However, this policy of restraint is no warrant for every plaintiff who can draft an antitrust complaint, no matter how groundless or improbable its allegations, to force his claim to trial despite its deficient factual underpinning. Rule [56] is quite clear and applies to all cases, even antitrust cases."

*See Lafayette Steel Co. v. National Steel Corp.,* 87 F.R.D. 612, 616 (E.D.Mich.1980), and the cases cited therein.

### IV.

The essence of plaintiffs' case is a conspiracy among the various defendants to restrain trade and monopolize the "rhythm and blues" segment of the recorded music business. The primary benefactors of this conspiracy were to be the ABC defendants, whose various corporations were to increase their market share due to the elimination of plaintiffs as competitors in the rhythm and blues record market.

Plaintiffs allege that the ABC defendants conspired with other defendants to induce recording artists under contract with plaintiffs in the early 1970's to breach those contracts and sign contracts with ABC. These recording artists included Arleen Schesel, Richard "Popcorn" Wylie and, most importantly, Lamont Dozier. Technical employees of plaintiffs were also allegedly approached to bolt to ABC. Plaintiffs further claim the conspiracy involved appropriation of their trade secrets.

It appears the "hub" around which plaintiffs' case revolves is Lamont Dozier, who until 1972 was a principal of plaintiffs along with Edward and Brian Holland. Dozier signed a contract with ABC on August 2, 1973, when plaintiffs claim he was still under contract to them. Dozier's attorneys at the time the ABC contract was signed were Feinman & Krasilovsky, P.C. (generally Marvin Krasilovsky) and Sanders, Tisdale, English, Tooks & Williams (generally David Williams). Dozier's business agent at the

time was Cary Harwin & Associates, of which Cary Harwin and Dale Rozzen were principals. Dozier's manager was Greif-Garris Management, Inc., whose principal was George Greif.

The Dozier/ABC contract was allegedly the result of inducement and negotiation by and between the ABC defendants and Dozier's attorneys, business agent and manager as part of a conspiracy originating in late 1972 to "pirate" recording artists from plaintiffs. Apparently plaintiffs allege the original conspiracy consisted of the ABC defendants (including Otis Smith, an executive with plaintiffs who in 1973 returned to ABC and became a vice-president with responsibility for the rhythm and blues record market), Dozier and his attorneys in the Sanders firm and other recording artists under contract to plaintiffs; the other conspirators joined at some unspecified later time prior to the signing of the Dozier/ABC contract in August 1973. *See* Plaintiffs' Proposed Findings of Fact (PFF) 99–101; Plaintiffs' Statement of Disputed Issues of Fact (ABC), Part II(B) ¶ 10–23; Affidavit of Edward Holland, Jr. (Plaintiffs' Summary Judgment Exhibit (Px15) ¶ 43–59 (all of which contain virtually identical wording).

After signing the contract with ABC and receiving a substantial advance (a part of which went directly to Williams), plaintiffs claim Dozier induced other artists and personnel under contract to them to breach those contracts and sign with ABC. The list includes Dozier's brother Reginald Dozier, Arleen Schesel and McKinley Jackson (who are named as conspirators) among others. As part of Dozier's agreement with ABC and with the help of Williams, he created Bullet Proof Music, Inc. and Dozier Music, Inc. and other corporations to publish his music.

Plaintiffs contend the conspiracy then continued into 1974 as the conspirators planned a lawsuit against plaintiffs and their remaining principals to secure the release of Dozier and the others from their contracts with plaintiffs. The conspirators, particularly Dozier and Harwin, allegedly contacted Kitch and Suhrheinrich, P.C. (generally Richard Kitch) to prosecute the

action. The suit, entitled *Dozier v. Holland, et al,* No. 74–016–445–CK (the Wayne County litigation), was filed on May 24, 1974 in Wayne County, Michigan, Circuit Court and has been pending since that time. Plaintiffs contend the suit when brought was frivolous and a sham designed solely to put pressure on them to release Dozier and the others from their contracts, and was part of the conspiracy to force plaintiffs out of business and allow ABC to monopolize the rhythm and blues record market.

As plaintiffs summarize their case (PFF 99), the conspiracy was to be accomplished by:

1. Pirating plaintiffs' key employees;

2. Soliciting and hiring away plaintiffs' key creative people;

3. Appropriating for their own use plaintiffs' distributor lists, contract roster, trade secrets, know-how and business methods;

4. Falsely advising plaintiffs' people that plaintiffs would go out of business in order to frighten those employees and creative people to leave plaintiffs' employ or relationship;

5. Soliciting and hiring away plaintiffs' employees and creative people for the purpose of acquiring and using plaintiffs' confidential information, trade secrets, know-how and business methods; and

6. Subverting plaintiffs' employees and creative people through commercial bribes, to act in violation of their fiduciary duties and contractual obligations to plaintiffs.

Those factual allegations essentially comprise plaintiffs' case, which was filed just over one year after the Wayne County litigation was begun. Whether plaintiffs' version of these facts as described is supported by the record on summary judgment and states one or more claims for relief is, broadly speaking, the issue now before me.

V.

THE KITCH DEFENDANTS

Plaintiffs' claims against the Kitch defendants consist of participation in the

conspiracy to facilitate ABC's monopolization of the rhythm and blues record market (Counts I–XI) and negligence due to breach of a duty owed to plaintiffs by bringing and prosecuting the Wayne County litigation (Count XII).

The Magistrate recommends that summary judgment be granted in favor of the Kitch defendants on all claims. As to Count XII, the Magistrate correctly cites *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585 (1981), as holding that an attorney prosecuting a lawsuit owes no duty of care to an opposing party and thus cannot be liable to an opposing party for negligence. The Magistrate also notes that plaintiffs' counsel agreed during argument that Count XII must fail if *Friedman* is to be applied retroactively, and cites *Tate v. Town & Country Lanes, Inc.,* 79 Mich.App. 89, 92, 261 N.W.2d 220 (1977), in support of retroactive application. Plaintiffs have not objected to this portion of the Magistrate's report. Accordingly, I will adopt the Magistrate's recommendation and grant summary judgment in favor of the Kitch defendants on Count XII.

■ As to Counts I–XI, the Magistrate recommends that summary judgment be granted on the authority of *Tillamook Cheese & Dairy Association v. Tillamook County Creamery Association,* 358 F.2d 115 (9th Cir.1966), and its progeny. The *Tillamook Cheese* line of cases holds that while generally individuals through whom a corporation acts may be liable for antitrust violations, those persons who function solely as legal advisers are exempted from liability. While in *Tillamook Cheese* a question of fact concerning the attorney's role precluded summary judgment, the court stated:

"We do not believe [the general] rule can be applied to the counsel for a corporation whose activity is brought into question, if the role of the counsel was only that of a legal adviser. This would be true even if, as counsel, he mistakenly advised corporate officers that a particular course of conduct would not violate [the antitrust laws]. But if he goes beyond that role and, acting by himself or jointly with others, makes policy decisions for the corporation, then he subjects himself to liability ... as in the case of any executive officer of the company performing a similar function."

358 F.2d at 118.

The Magistrate concludes there is no material issue of fact in this regard because the affidavit of Richard A. Kitch (Kitch Exhibit 1), in which he states that neither he nor his firm acted in any capacity other than as attorney for Lamont Dozier, is unrefuted. Plaintiffs object (Objections # 1, 2) that Kitch's affidavit is conclusory and is contradicted by other evidence indicating the Kitch defendants acted as more than legal advisers.

While a person acting as attorney for a party may be acting as more than a legal adviser as that term is used in *Tillamook Cheese,* there is simply no evidence to suggest that the Kitch defendants acted as anything but legal advisers to Lamont Dozier in this case. Plaintiffs cite the affidavit of Edward Holland, Jr. (Px15) ¶ 52 and Richard Kitch's deposition (Px30) at 11–12 as evidence of the Kitch defendants' enlarged role.

Neither citation supports plaintiffs' position. ¶ 52 of the Holland affidavit is but a conclusory restatement of PFF 102 in affidavit form. It offers no facts based on Holland's personal knowledge as required by Fed.R.Civ.P. 56(e) or otherwise. Moreover, Holland's assertion that the Kitch defendants joined other defendants in the alleged conspiracy to pursue a course of conduct going well beyond the Wayne County litigation cannot be reconciled with his deposition testimony, where Holland acknowledged that the only claim of wrongful conduct against the Kitch defendants arises out of the Wayne County litigation. Holland deposition (Kitch Exhibit 4) at 368–69, 411–18.

Kitch's cited deposition testimony concerns an initial meeting he had with his law partner Richard Suhrheinrich, Lamont Dozier, Cary Harwin (Lamont Dozier's business manager) and Reginald Dozier in Cali-

fornia in May 1974 to discuss the Wayne County litigation. Nothing in Richard Kitch's description of that meeting (about which he was barely questioned by plaintiffs' counsel) gives even the slightest indication that the Kitch defendants were acting as anything but legal advisers to Lamont Dozier in preparing to prosecute the Wayne County litigation. Richard Kitch's billing records (Plaintiffs' Proposed Trial Exhibits # 484 and 594) and Lamont Dozier's deposition testimony (Kitch Exhibit 14) at 86 and 110–11 support this conclusion.

Despite the general reluctance to grant summary judgment in antitrust cases, plaintiffs have offered simply no evidence taking the Kitch defendants beyond the *Tillamook Cheese* exception to antitrust and conspiracy liability. Counts I–XI against the Kitch defendants will be dismissed. *See* note 4, *infra.*

## VI.

## THE KRASILOVSKY DEFENDANTS

The Magistrate recommends that plaintiffs' claims against the Krasilovsky defendants, which are legally identical to the claims against the Kitch defendants, also be dismissed. The Krasilovsky defendants' motion for summary judgment adopts the Kitch defendants' motion by reference, including the *Tillamook Cheese* doctrine. The Magistrate concludes that *Friedman v. Dozorc, supra,* requires dismissal of Count XII and the absence of evidence that the Krasilovsky defendants acted as anything but legal advisers to Lamont Dozier requires dismissal of Counts I–XI.

Plaintiffs again do not object to the Magistrate's recommendation concerning Count XII and it will be dismissed. As to Counts I–XI, plaintiffs object (Objection # 3) that the Magistrate drew incomplete generalizations from the record as to the role of the Krasilovsky defendants. Their argument is that these defendants went far beyond the role of legal adviser to Lamont Dozier and thus cannot invoke the doctrine of *Tillamook Cheese.*

The various portions of the record cited by plaintiffs simply do not support their position. PFF 136(b), (e), (h), (i), (k)(i)–(xvi) and (*o*)–(aa), repeated verbatim in the Holland affidavit (Px15) ¶ 13–23, allege that Marvin Krasilovsky attended several meetings with other attorneys for Lamont Dozier and various ABC personnel to discuss negotiations between Dozier and ABC, the legal status of plaintiffs' contracts with Dozier and his assistants and the filing of the Wayne County litigation to free Dozier from whatever binding effect may have existed in the Dozier/Invictus contract. PFF 111 and 115 indicate that Krasilovsky expressed his legal opinion that the Dozier/Invictus contract was not binding to ABC, plaintiffs and plaintiffs' counsel and told them that in any event a lawsuit would be filed to judicially test his opinion. Edward Holland, Jr.'s 1980 affidavit (Px17) ¶ 13 and 15 contains similar allegations.

David Williams in his deposition (Px23) at 23, 37–38, 63–68 expresses a similar legal opinion as that offered by Krasilovsky but makes no mention of the Krasilovsky defendants. Leonard Korobkin in his deposition (Px24) at 34–36 indicates letters were sent among the Krasilovsky defendants and ABC personnel and other record companies concerning the Dozier/Invictus contract but does not detail the content of those letters. One such letter from Krasilovsky to Columbia Records, Inc. dated August 28, 1973 (Px44) informed Columbia, as plaintiffs' licensee, of Krasilovsky's opinion that Dozier did not consider himself bound by his contract with plaintiffs at least regarding recording services. These claims are restated in Plaintiffs' Statement of Disputed Issues of Fact (ABC), Part II(B) ¶ 13, 21, 24 and 25.

While plaintiffs are again correct that an attorney acting within the scope of his role as attorney may be more than a legal adviser under *Tillamook Cheese,* the evidence indicates and suggests nothing more than that the Krasilovsky defendants acted as legal advisers to Lamont Dozier. That they participated in negotiations on his behalf with ABC, expressed a legal opinion that his contract with plaintiffs was not binding

and planned a lawsuit to test that opinion, which is all the facts alleged by plaintiffs demonstrate, is not inconsistent with their role as legal advisers to Lamont Dozier. That they were apparently successful or at least vigorous and persistent on behalf of their client does not take them beyond the protection of *Tillamook Cheese*. They were, at least as has been shown on this record, acting as legal advisers and nothing more. Only by engaging in speculation rather than reasonable inference can an antitrust violation be found. See *Provenzino, supra*. Summary judgment will be entered on Counts I–XI as to the Krasilovsky defendants. See note 4, *infra*.

## VII.

### THE DOZIER DEFENDANTS

The Dozier defendants are named as co-conspirators in Counts I–XI of the amended complaint. While their motion for summary judgment also adopted the Kitch defendants motion by reference, since none of the Dozier defendants are attorneys they cannot rely on the *Tillamook Cheese* doctrine. Rather as their counsel conceded at oral argument, the Dozier defendants rely on the *Noerr-Pennington* doctrine and limit their request for relief to striking all reference to the Wayne County litigation from the amended complaint.

The Magistrate recommends the Dozier defendants' motion as reframed be granted. He accurately describes the *Noerr-Pennington* doctrine as an "antitrust immunity previously extended to concerted attempts to influence legislative and administrative action" required by constitutional guarantees under the First Amendment. See *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *Noerr-Pennington* was extended to concerted judicial action in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). However, the immunity was held not to extend to "a pattern of baseless, repetitive

claims" which "leads the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. at 513, 92 S.Ct. at 613.

The Dozier defendants argue that even accepting plaintiffs' characterization of the Wayne County litigation as baseless or a sham designed solely to pressure plaintiffs to capitulate to Lamont Dozier's demands, one lawsuit cannot constitute a "pattern of baseless, repetitive claims" necessary to abrogate the *Noerr-Pennington* immunity. Plaintiffs, relying on *Sage International, Ltd. v. Cadillac Gage Co.*, 507 F.Supp. 939 (E.D.Mich.1981), and other district court decisions, argue that one lawsuit may be sufficient to state an antitrust claim.

The Magistrate finds it unnecessary to determine whether a single lawsuit is sufficient. He concludes plaintiffs cannot demonstrate that the Wayne County litigation was a sham even on summary judgment because a necessary element of that showing is termination of the lawsuit in their favor. Since the Wayne County litigation has not been terminated in favor of either party, plaintiffs cannot avoid the *Noerr-Pennington* immunity.

Plaintiffs do not argue that termination of the Wayne County litigation is unnecessary. In fact, the court specifically held to the contrary in *Sage International, supra*, 507 F.Supp. at 947, the main case upon which plaintiffs rely, analogizing the "sham litigation" exception to *Noerr-Pennington* to the tort of malicious prosecution. The court's analysis is instructive:

"Therefore, it should be sufficient for a plaintiff to allege facts to support at least a malicious prosecution with the intent to exclude the plaintiff from the marketplace and with success in achieving this end. In the absence of termination of the underlying prosecution in favor of the antitrust plaintiff, I would be skeptical of the possibility of maintaining the antitrust cause of action without some firm allegation of perjury or other misconduct that misled the tribunal to decide against

the antitrust plaintiff, thereby, in effect, denying access to that tribunal . . . .

The requirement of an allegation at least sufficient to support a malicious prosecution claim takes into account the original *Noerr-Pennington* concern that only abusive conduct having a direct effect on the antitrust plaintiff's trade can be the basis for a claim that avoids the *Noerr-Pennington* immunity . . . . Although *Trucking Unlimited* did not establish clear circumstances in which the *Noerr-Pennington* exception could be applied, the Court did note the allegation that litigation was begun without regard to probable cause or the merits of the cases. Similarly, in the context of malicious prosecution, a fundamental element is the absence of probable cause for the action. W. Prosser, Law of Torts, at 835 (4th ed. 1971). It is also noted that a malicious prosecution is inherently contrary to interests of integrity in the judicial system because it preempts judicial time for meritless litigation and is a plain subjugation of legal process to personal motives. When a malicious prosecution is brought with direct anticompetitive intent, the immunity of *Noerr-Pennington* can be no shield for the malicious prosecutor."

507 F.Supp. at 947–48 (footnotes and some citations omitted). *See also: Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.,* 560 F.2d 211, 213 (6th Cir.1977).

Plaintiffs object that the Wayne County litigation "has been terminated favorably because no adverse judgment was entered against" them (Objection # 4), citing the Holland affidavit (Px15) ¶ 79(v) and an affidavit of Frederick A. Patmon ¶ 5–11. Neither affiant indicates the Wayne County litigation has been terminated favorably to plaintiffs here, only that the parties agreed on June 27, 1979 to settle the case and the settlement was not in favor of Lamont Dozier, the plaintiff in that case.

In fact the record does not contain any evidence that the case has been terminated, much less terminated in favor of plaintiffs here. Transcripts of hearings in Wayne County Circuit Court on June 27, 1979 and July 10, 1981 indicate that a settlement of the case for $20,000 was placed on the record on June 27, 1979 but was never confirmed in a judgment. An attempt by counsel for the plaintiffs in that case to confirm the settlement in a judgment was opposed by counsel for plaintiffs in this case and was denied by Judge John R. Kirwan on July 10, 1981. Judge Kirwan held that a condition of the settlement had never been agreed to by all parties, namely whether the scope of releases and covenants-not-to-sue to be mutually executed by the parties included this federal antitrust action. When the settlement was agreed to in June 1979, the plaintiffs in that case believed (or hoped) those covenants would cover this case; plaintiffs in this case (defendants in the Wayne County litigation) believed the opposite. Judge Kirwan held:

"I think if there is a mistake so basic, you know, which I think there is here, there is just no meeting of the minds and it's like a contract if there's no meeting of the minds. And as I reviewed the record before, I don't think that it was clear and I don't see how anyone is greatly harmed under these circumstances if you continue with your action. *The case isn't dismissed, and there was just never a meeting of the minds, it was just as if that never really occurred.* It was just such a basic thing.

*So I really don't think there was a settlement.* I think I essentially disagree with you both. I know you both thought there was a settlement and I thought there was a settlement too, but *it was such a basic mistake and misunderstanding that there was no meeting of the minds and there really wasn't a settlement, and that's the way I view it.*"

Transcript of July 10, 1981 hearing at 11–12 (emphasis added).

■ Since Judge Kirwan held there was no settlement and refused to enter a judgment of dismissal and the record in this case contains no other evidence that the Wayne County litigation has been terminated favorably to plaintiffs in this case (i.e.,

dismissed), a claim of "baseless" litigation cannot be sustained. The fact that no judgment has been entered against the defendants in that case (plaintiffs here) is not sufficient. *Friedman, supra,* 412 Mich. at 48 n. 43, 312 N.W.2d 585. Accordingly, plaintiffs cannot avoid the *Noerr-Pennington* immunity and all claims against the Dozier defendants arising out of the Wayne County litigation will be dismissed.[1]

Moreover, my reasons for dismissal of the antitrust and other federal claims against the ABC defendants (*see* Part VIII below) apply equally to the Dozier defendants. Thus I will go beyond the Dozier defendants' reframed motion and the Magistrate's recommendation that claims arising out of the Wayne County litigation be dismissed and will dismiss all claims against the Dozier defendants. *See* note 4, *infra.*

## VIII.

## THE ABC DEFENDANTS

I believe the heart of plaintiffs' case is their variety of claims against the ABC defendants, the corporations (American Broadcasting Companies, Inc., ABC Records, Inc., ABC Record and Tape Sales Corporation, ABC Recording Studios, Inc., ABC/Dunhill Music, Inc. and GRT Corporation) and individuals (Pompadour, Lasker, Korobkin and Smith) for whose primary benefit the alleged conspiracy to dominate the rhythm and blues segment of the recorded music business was formed.

The federal claims asserted by plaintiffs against the ABC defendants, described in Part I(A) above, are under the Sherman Act § 1, 15 U.S.C. § 1, for conspiracy in restraint of trade (Counts I and II), Sherman Act § 2, 15 U.S.C. § 2, for conspiracy to monopolize (Counts III and IV), Clayton Act § 7, 15 U.S.C. § 18, for substantially lessening competition (Count VI) and Lanham Act § 43(a), 15 U.S.C. § 1125(a), for intentional misrepresentation of articles in commerce (Count VII). The pendent state

claims in Counts VIII, IX and XI need only be considered if the federal claims withstand the motion for summary judgment.

The Magistrate, accepting plaintiffs' version of the facts as true where supported by competent evidence under Fed.R.Civ.P. 56(e), recommends dismissal of the claims under the Sherman and Clayton Acts for failure to demonstrate the basic requirement of an antitrust claim, namely anticompetitive effect, by showing the relevant geographic and product market and assessing market power within that market. The Magistrate recommends dismissal of the Lanham Act claim for lack of any factual basis. Plaintiffs object (Objections # 5–11) to each recommendation.

### A.

### *Sherman § 1 Claims*

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, reads in part:

"Every contract, combination in the form of trust or otherwise, or *conspiracy, in restraint of trade* or commerce among the several States, or with foreign nations, is declared to be illegal ...." (emphasis added)

To establish a conspiracy in restraint of trade, as plaintiffs allege, they must demonstrate the existence of a conspiracy falling within one of the categories of *per se* offenses (e.g., price fixing, division of markets or customers or group boycotts) or which is unreasonable when tested by the rule of reason. *Eliason Corp. v. National Sanitation Foundation,* 485 F.Supp. 1062, 1075 (E.D.Mich.1977), *aff'd,* 614 F.2d 126 (6th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 29 (1980).

The Magistrate notes in an introductory comment that plaintiffs make no claim of any *per se* violation of Sherman § 1. Plaintiffs object (Objection # 5) and cite *Tower Tire & Auto Center, Inc. v. Atlantic Richfield Co.,* 392 F.Supp. 1098 (S.D.Tex.1975),

---

**1.** Independently of the other reasons expressed in this opinion for the dismissal of claims against the Kitch defendants, the Krasilovsky defendants, the ABC defendants and the "other" defendants, this analysis would require striking all reference to the Wayne County litigation from the amended complaint against them as well.

for the proposition that conduct amounting to unfair competition as part of a conspiracy to destroy or injure a competitor may amount to a *per se* violation of Sherman § 1.

Plaintiffs' attempt to fashion a *per se* antitrust violation at this stage of its case is without merit. Such a claim has never been made to date and appears merely to be an afterthought reaction to the Magistrate's comment. Moreover, the holding in *Tower Tire* was based on the *Pick-Barth* doctrine, *Albert Pick-Barth Co., Inc. v. Mitchell Woodbury Corp.,* 57 F.2d 96 (1st Cir.), cert. denied, 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932), a doctrine which has been severely criticized, never adopted in the Sixth Circuit and rejected by the Court of Appeals for the Fifth Circuit three years after the district judge in that circuit decided *Tower Tire. See Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283 (6th Cir.), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). *See also: Northwest Power Products, Inc. v. Omark Industries, Inc.,* 576 F.2d 83, 86–90 (5th Cir.1978). I find nothing to suggest that a claim of a *per se* violation of Sherman § 1 is in this case.

The Magistrate recommends dismissal of the Sherman § 1 claims because even accepting plaintiffs' factual allegations regarding the conduct of the ABC defendants (*see* Part IV above) as true, plaintiffs have failed to demonstrate *antitrust* injury. He cites the well-established doctrine that the antitrust laws are designed to protect competition, not competitors. *Brown Shoe Co., Inc. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962); *Ace Beer Distributors, supra.* What must be demonstrated by plaintiffs even on summary judgment is not merely injury to them proximately resulting from the conduct of the ABC defendants, but that their injury had an anti-competitive effect on the market. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (Clayton § 7); *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1234 (6th Cir.1981) (applying *Brunswick* to Sherman § 1 claims). The Magis-

trate finds not so much as an attempt by plaintiffs to demonstrate anti-competitive effect.

Moreover, the Magistrate buttresses his conclusion by observing that plaintiffs have failed to produce any competent evidence describing the relevant product and geographic market. Without such a demonstration, of course, any attempt to show anti-competitive effect would be sheer speculation. It is impossible to measure an impact on competition without first defining the market within which to look. *See Associated Radio Service Co. v. Page Airways, Inc.,* 624 F.2d 1342, 1348 (5th Cir. 1980), cert. denied, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 226 (1981).

Plaintiffs object (Objections # 6 and 8) that the record contains facts from which anti-competitive effect and the relevant market may be inferred. The vast majority of the cited references are either irrelevant to the issues of anti-competitive effect and relevant market or are denials of plaintiffs' requests for admissions by various defendants. *See* Plaintiffs' Statement of Disputed Issues of Fact (ABC), Part II(A) ¶ 1–7, 12–14, 16, 18 and 20–23, and Part II(B) ¶ 1–2, 10–25 and 28–31; Px10 at 28–31, Px11 at 17, Px12 at 9; Holland affidavit (Px15) at 9.

The cited references which are arguably relevant simply are insufficient. Holland's affidavit (Px15) at 17 (¶ 66) and 32 (¶ 79(w)) states only that there was considerable demand for plaintiffs' products and that plaintiffs suffered millions of dollars in damages. There is no indication of anti-competitive effect caused by the conduct of the ABC defendants. PFF 41–44, which propose the relevant market to be

"... the creation, production, manufacture, distribution, marketing, sale, license or other exploitation, both at the wholesale and retail levels, of phonograph records ... and musical compositions within the ... so called R&B (rhythm and blues) soul or Black music segments of popular music ... in the U.S.A. ... and the sub-market ... includ[ing] the areas of

Detroit, Los Angeles, Chicago, Washington, D.C., Baltimore, New York City, Newark, Philadelphia, Atlanta, Houston, Dallas, Cleveland, Boston and Buffalo", are not supported by any competent evidence in the record.[2] Plaintiffs cannot withstand summary judgment by arguing that determining the relevant market is a question of fact without offering any evidence supporting their identification of that market and thus not even beginning to state a claim of anti-competitive effect.

In addition, the ABC defendants cite the only statistical evidence in the record regarding anti-competitive effect, which indicates that from 1967–76 the number of firms competing in the market as defined by plaintiffs in PFF 41–44 actually *increased* from six to eight, including five new entrants into the market after early 1974. ABC Exhibit 10 (Plaintiffs' Answers to ABC Defendants' Interrogatories (First Set)) # 3. The ABC corporate defendants' share of the popular music record market is conceded by plaintiffs not to exceed 20% (PFF 97) and at no time did ABC's sales of popular or rhythm and blues records approach the level of the industry leaders. ABC Exhibit 3 (ABC Defendants' Responses to Plaintiffs' Interrogatories (Second Set)) # 3. In fact, ABC's share of the popular music record market declined from 1974–76 and the ABC defendants claim to no longer be in the recorded music business. I cannot from the record draw an inference of anti-competitive effect caused by the ABC defendants' alleged acts.

Finally, plaintiffs' citation of *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142 (6th Cir.

1975), as indicating that antitrust injury need not be shown, is inapposite. Not only did *Malamud* involve a standing issue under the Clayton Act § 4, an issue not presented here, the Court of Appeals has indicated that *Brunswick, supra,* has modified *Malamud* to require a demonstration of anti-competitive effect even under Clayton § 4. *Chrysler Corp., supra,* 643 F.2d at 1234–35.

█ In short, plaintiffs' failure to offer competent evidence of anti-competitive effect proximately caused by the ABC defendants and their failure to define the relevant geographic and product market requires dismissal of their claims in Counts I and II under Sherman § 1.

### B.

### *Sherman § 2 Claims*

Section 2 of the Sherman Act, 15 U.S.C. § 2, is violated by

"every person who shall monopolize, or attempt to monopolize, or combine *or conspire with any other person or persons, to monopolize* any part of the trade or commerce among the several States . . . ." (emphasis added)

Plaintiffs claim in Counts III and IV of the amended complaint that the ABC defendants in conjunction with other defendants conspired to monopolize the rhythm and blues segment of the recorded music business. Although it has not always been clear during the course of this action, plaintiffs do not claim monopolization or an attempt to monopolize.[3]

---

**2.** Plaintiffs' argument that the Magistrate acted improperly by accepting their proposed findings of fact when detrimental to their case while rejecting them when supportive is without merit. The proposed findings are a "road map" of what plaintiffs intend to prove at trial. Proposed findings of fact (as well as the filing of proposed trial exhibits) were required by me, even though there is a jury demand, to set the framework of the case. In fact, they saved plaintiffs from having to respond further to certain of ABC defendants' interrogatories. *See* Pre-Trial Order No. 8 ¶ D. If plaintiffs assert they will prove a certain material fact, the Magistrate correctly must determine whether there is evidence in the record to sup-

port that assertion on summary judgment. On the other hand, if plaintiffs do not even assert by a proposed finding that they will prove a certain fact, the Magistrate may properly assume plaintiffs believe that fact is either irrelevant or unsupportable by evidence in the record.

**3.** Count V of the amended complaint alleged a conspiracy to attempt to monopolize, which is not an offense under Sherman § 2 and was dismissed by Judge Boyle. *See* III P. Areeda and D. Turner, *Antitrust Law* (1978) ¶ 839 at 359.

The Magistrate recommends dismissal of these counts because plaintiffs concede the market share of the ABC defendants never exceeded 20%, which is insufficient for monopoly power. *See Byars v. Bluff City News Co., Inc.,* 609 F.2d 843 (6th Cir.1979). Plaintiffs, after having not addressed the Sherman § 2 claims in their brief on summary judgment, object (Objections # 7 and 9) that monopoly power need not be demonstrated to state a claim of conspiracy to monopolize. The ABC defendants respond that even if demonstration of monopoly power is not required, plaintiffs must but have not shown a dangerous probability of successful monopolization, pointing to the market data (or lack thereof) discussed in Part VIII(A) above. The ABC defendants also cite their own affidavits and deposition testimony denying any specific intent to monopolize any segment of the recorded music business. *See* Px20 ¶ 5–7; Px21 ¶ 4–6; Px37 ¶ 5–7; Px24; Px25; Px49; Px50.

█ Since plaintiffs' claim is not monopolization, they are not required to demonstrate that the ABC defendants secured monopoly power by virtue of their actions. *See Robinson v. Magovern,* 521 F.Supp. 842, 886 (W.D.Pa.1981); *Giant Paper and Film Corp. v. Albemarle Paper Co.,* 430 F.Supp. 981, 986 (S.D.N.Y.1977). Since their claim is not attempt to monopolize, they are not required to show a dangerous probability of success. *Robinson, supra,* 521 F.Supp. at 891; *Giant Paper, supra,* 430 F.Supp. at 987. Each of the cases cited by the ABC defendants in this regard concerned an attempt rather than a conspiracy to monopolize.

█ Nonetheless, plaintiffs' claims under Sherman § 2 must be dismissed. While some courts have indicated the elements of conspiracy to monopolize are (1) an agreement; (2) a specific intent to monopolize; and (3) an overt act in furtherance of the conspiracy, without regard to market power, *see, e.g., Robinson, supra,* 521 F.Supp. at 892, such analysis operates in a vacuum. Determining the relevant market and thereby assessing market (though not necessarily monopoly) power is crucial to the

issue of specific intent to monopolize. *Id.* In light of the explicit denials of specific intent to monopolize by the defendants in affidavits and deposition testimony, the failure of plaintiffs to define the relevant market and assess the relative market power of the ABC defendants hampers their attempt through admittedly circumstantial evidence to demonstrate specific intent to monopolize. This is summary judgment, however, and while I am skeptical plaintiffs could prevail at trial, I am not prepared to conclude there is no genuine issue of material fact regarding the ABC defendants' specific intent to monopolize.

█ Rather, I believe that to hold a conspiracy to monopolize claim may be properly stated and proven without regard to market power is analytically unsound. In Sherman § 1 conspiracy cases an antitrust plaintiff is required, absent a *per se* violation, to demonstrate an unreasonable restraint of trade within the defined relevant market. As seen in Part VIII(A) above, anti-competitive effect required to state a Sherman § 1 claim cannot be shown without determining the relevant market and assessing the relative market power of the conspirators. To allow an antitrust plaintiff to circumvent the market definition and market power assessment requirements of proving a conspiracy case under Sherman § 1 simply by calling the identical conduct a conspiracy to monopolize under Sherman § 2 makes no sense. As noted above, the purpose of the antitrust laws is to protect competition and prevent anti-competitive effect. Without reference to markets and market power, the prohibition of conspiracy to monopolize under Sherman § 2 fails to relate to this goal.

As Areeda and Turner state:

"We do note that the courts referring to conspiracies to monopolize have generally held that market power or market definition is not a prerequisite to finding that offense. Often, however, the conspiracy allegation appears to be no more than an afterthought appended to § 1 claims, and it seldom gets the court's primary attention. Where the agree-

ments involved would also be held to offend § 1 without the necessity of proving power, the failure to require it for the § 2 conspiracy offense is understandable. However, in those instances where power is a prerequisite to holding an agreement to be an unreasonable restraint of trade ... it would make no sense to hold the same agreement offensive to § 2 without proof of power. To require power under § 1 before condemning a particular agreement is necessarily to say that the arrangement is socially desirable, or at least not harmful, in the absence of power. That policy conclusion cannot sensibly be avoided or negated by the simple trick of calling the agreement a conspiracy to monopolize." (footnote omitted) III P. Areeda and D. Turner, *Antitrust Law* (1978) ¶ 839 at 358–59. I believe Counts III and IV of the amended complaint are afterthoughts as Areeda and Turner describe. Having failed to demonstrate the requirements of a conspiracy claim under Sherman § 1, plaintiffs will not be allowed to replead the same facts and obtain relief under Sherman § 2. Counts III and IV will be dismissed.

### C.

### *Clayton § 7 Claims*

Section 7 of the Clayton Act, 15 U.S.C. § 18, creates a cause of action in favor of one injured by the anti-competitive effect of an acquisition or merger that tends to substantially lessen competition or to create a monopoly. *Brunswick Corp., supra.* Count VI of the amended complaint is a claim by plaintiffs that the ABC defendants' acquisition of Famous Music Corporation and Duke/Peacock Records as well as other unspecified music label competitors from 1972–75 substantially lessened competition in the rhythm and blues segment of the recorded music business to plaintiffs' detriment.

The Magistrate recommends that Count VI be dismissed because of plaintiffs' failure, as with their claims under the Sherman Act, to demonstrate the relevant market and present any evidence showing an anti-

competitive effect of these acquisitions. Plaintiffs object (Objection # 10) that a lessening of competition may be inferred from unspecified answers of the ABC defendants to plaintiffs' second and third sets of requests for admissions, although this argument was not advanced in their response to the summary judgment motion.

■ That the ABC defendants acquired the Famous Music and Duke/Peacock labels around 1973 is not disputed. However, market analysis is especially important in Clayton § 7 cases, since the statute by its terms requires an anti-competitive effect in a "line of commerce" (product market) in a "section of the country" (geographic market). *Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499, 543 (E.D.Mich.1974), *aff'd,* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). As I found in Part VIII(A) above, that market evidence and analysis is lacking here. The ABC defendants' responses to plaintiffs' second set of requests for admissions (Px10) ¶ 21–24 and 28–33, all of which are answered by general if not specific denials, add nothing to plaintiffs' case. The court docket entries do not reflect a third set of requests for admissions directed to the ABC defendants. The ABC defendants' answers to plaintiffs' second set of interrogatories (ABC Exhibit 3) and plaintiffs' answers to the ABC defendants' first set of interrogatories (ABC Exhibit 10), discussed in Part VIII(A) above, indicate that plaintiffs have not shown a substantial lessening of competition due to the ABC acquisitions in what they deem to be the relevant market.

■ The observations of the court in *Overseas Motors, supra,* 375 F.Supp. at 543, are applicable here:

"Here [plaintiffs have cited] no evidence of market structure, market shares, barriers to entry, fluidity and expansion, or any of the multitude of other economic factors from which one might find a lessening of competition, and there is obviously no evidence upon which a finding of

a substantial lessening of competition could be based."

Accordingly, plaintiffs' claim in Count VI of the amended complaint under Clayton § 7 will be dismissed.

### D.

#### Lanham § 43(a) Claims

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, *a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same,* and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation." (emphasis added)

Plaintiffs seek damages for violation of Lanham § 43(a) in Count VII, claiming that the ABC defendants in concert with other defendants produced and sold phonograph records of performances of artists who had previously been under exclusive contract to plaintiffs but had signed contracts with ABC. When plaintiffs produced and sold records of these artists from 1969–79, the name of the artist and plaintiffs' trademarks ("Invictus", "Holland-Dozier-Holland Productions" and "Holland-Dozier-Holland Music") accompanied the articles into commerce. The ABC defendants' records accompanied by the artists' names and other information were allegedly designed to deceive the record-buying public, presumably into believing the ABC records were actually plaintiffs' product (a false description of origin) or that these artists were under exclusive contract to ABC (a false representation), thereby diverting record sales from plaintiffs to the ABC defendants. *See* Amended Complaint ¶ 64–69; PFF 116–33 and 135.

The Magistrate recommends dismissal of Count VII for failure to satisfy the factual requirements of a Lanham § 43(a) claim on summary judgment. Specifically, the Magistrate finds plaintiffs have failed to (1) identify any specific false statement made by the ABC defendants about their own products; (2) cite any evidence of actual public deception; and (3) produce any evidence of sales diversion from plaintiffs to the ABC defendants. *See Skil Corp. v. Rockwell International Corp.,* 375 F.Supp. 777, 783 (N.D.Ill.1974).

Plaintiffs object (Objection # 11) that ABC album covers and annual reports filed by the ABC corporate defendants with the Securities and Exchange Commission (SEC) contained false statements regarding the exclusive nature of ABC's contracts with Lamont Dozier ·and other artists. These album covers and annual SEC reports were filed by plaintiffs as potential trial exhibits along with 550 other exhibits; plaintiffs do not specify which particular exhibits they are referring to. Moreover, plaintiffs cite no evidence in the record indicating even on summary judgment that these "false descriptions" by the ABC defendants actually deceived the public or diverted sales from plaintiffs to the ABC defendants. On this basis alone summary judgment on Count VII is appropriate.

Nonetheless, I have identified Plaintiffs' Proposed Trial Exhibits # 134 and 384 as the sole ABC album and record in the proposed exhibits; no album covers are included save one of Warner Brothers (# 429) and one of plaintiffs (# 27) whose accompanying albums each include one of plaintiffs' trademarks. Nothing in any of these exhibits indicates a false statement or description by the ABC defendants concerning their own products.

The SEC annual reports of the ABC corporate defendants are Plaintiffs Proposed Trial Exhibits # 18, 18(A), 18(B)–(D), 18(F), 114(B) and 609. Although mention is frequently made of various artists under contract with ABC and recording under the ABC labels, nowhere in the reports is there a claim that the ABC contracts with the various artists were exclusive. *See* # 18 at 2; # 18(B)–(D) at 2; # 18(F) at 3; # 114(B) at 5–8; # 609 at 1, 2 and 4. Even if such representations were made, plaintiffs have not cited (nor is it likely they could cite) any evidence that members of the record-buying public were actually deceived and purchased ABC records in reliance on statements made by ABC in an SEC annual report.

■ In short, plaintiffs' Lanham Act § 43(a) claim fails on summary judgment due to lack of any demonstrated factual basis. Plaintiffs' failure to identify the relevant geographic and product market and thus assess the market power of the ABC defendants within that market, even under the rigid standards for summary judgment, requires dismissal of the Sherman § 1, Sherman § 2 and Clayton § 7 claims of the amended complaint.[4]

## IX.

### THE "OTHER" DEFENDANTS

Defendants David Williams, Sanders, Tisdale, English, Tooks & Williams, Dale Rozzen, George Greif, Greif-Garris Management, Inc. and Reginald Dozier have not filed motions for summary judgment. With the possible exception of Williams (and thus the Sanders firm), these defendants were at most tangential characters with minor roles in the events giving rise to suit. Plaintiffs have filed a motion for entry of a default judgment against Williams, the Sanders firm and Reginald Dozier for failure to answer interrogatories. It appears each defendant has been served (*see* court docket entries # 183, 184, 210, 216, 218 and 220).

■ I am well aware of the dangers inherent in considering summary judgment in favor of non-moving parties. While the practice is not often counseled, there is inherent authority for the entry of a summary judgment *sua sponte. See FLLI Moretti Cereali S.p.A. v. Continental Grain Co.,* 563 F.2d 563, 565 (2nd Cir.1977); 6 *Moore's Federal Practice,* ¶ 56.12. The concern, of course, is that the parties be given an adequate opportunity to address the issues and the party against whom summary judgment will be entered be allowed to demonstrate why it should not be granted. *Kistner v. Califano,* 579 F.2d 1004, 1006 (6th Cir.1978).

It is for these reasons that I described with some particularity in Part I(B) the history of this case and the process which led to the motions for summary judgment. I believe plaintiffs have had ample opportunity to conduct discovery, marshal their evidence and present both facts and legal arguments relative to the allegations of the amended complaint. Plaintiffs have prepared and filed proposed findings of fact, witness and exhibits lists and proposed trial exhibits from which it is readily apparent what they expect to prove at trial. If plaintiffs intend to present support for their factual claims against the non-moving defendants at trial, as presumably they do, it will of necessity be found in the filings-to-date. The only difference is that at this

---

**4.** As the Magistrate recommends, I decline to exercise pendent jurisdiction over plaintiffs' state law claims in Counts VIII, IX and XI as against the ABC defendants. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

The pendent state law claims in Count XII were dismissed as against the Kitch and Krasilovsky defendants in Parts V and VI, respectively, above and will be dismissed as against David Williams and the Sanders firm in Part IX(B) below. As to Counts VIII, IX and XI as against the Kitch, Krasilovsky, Dozier and "other" defendants, to the extent the reasons expressed in this opinion regarding the federal claims are inapplicable to these state claims, I similarly decline to exercise pendent jurisdiction over them under *Gibbs.*

stage, on summary judgment, the facts and evidence in the record must be viewed in the light most favorable to plaintiffs without assessing credibility or giving weight to that evidence.

Because I believe plaintiffs have had ample opportunity to present and in fact have presented their case (albeit in a summary judgment form rather than with live testimony) against all defendants rather than against only those who have moved for summary judgment, I will consider plaintiffs' claims against the non-moving defendants on summary judgment. When so tested, none of the claims withstands scrutiny.

### A.

### Rozzen, Greif, Greif-Garris Management, Inc. and Reginald Dozier

██ Mention of Rozzen, Greif, Greif-Garris Management, Inc. or Reginald Dozier is hardly made in the amended complaint or in any of plaintiffs' submissions. At no place are there any specific claims of antitrust or other wrongdoing; rather these defendants are simply claimed to have joined the ABC-backed conspiracy.

Dale Rozzen, partner of Cary Harwin & Associates, is mentioned in ¶ 20(f)–(1) and 22 of the amended complaint in conjunction with virtually all other defendants in a generalized conspiracy claim. He is simply identified in ¶ 18 of Plaintiffs' Short Claim Statement, filed June 9, 1980, with no specific claim of wrongdoing. He is identified in PFF 26 and alleged without more to have joined in the conspiracy in PFF 101 and to have participated in creating unspecified recordings and associated items embodying likenesses of artists once under contract to plaintiffs in PFF 129. No exhibits or testimony support these vague assertions other than their verbatim repetition in the Holland affidavit (Px15) ¶ 51 and 74.

George Greif and Greif-Garris Management, Inc., Lamont Dozier's manager and his company, are mentioned in similar paragraphs of the amended complaint, Plaintiffs' Short Claim Statement ¶ 8 and 20 and PFF 29, 102 and 129 mirrored by the Holland affidavit (Px15) ¶ 52 and 74. The allegations are similarly unspecific and contain no detailed factual claims of wrongdoing.

Reginald Dozier, Lamont Dozier's brother, is mentioned in similar paragraphs of the amended complaint, Plaintiffs' Short Claim Statement ¶ 21, Plaintiffs' Statement of Disputed Issues of Fact (ABC), Part II(A) ¶ 16 and PFF 32, 76, 99, 103 and perhaps 129 as mirrored by the Holland affidavit (Px15) ¶ 25, 28, 43 and 74. Plaintiffs allege that Reginald Dozier was under contract to them, had access to their materials, was induced to sign a contract with ABC by his brother and others and then helped to induce others under contract to plaintiffs to bolt to ABC. None of these claims are specific or supported by any evidentiary references other than Holland's affidavit, which as to all these defendants does not appear to be based on personal knowledge of the underlying facts as required by Fed.R.Civ.P. 56(e).

As to these defendants, plaintiffs appear to have simply set out a "dragnet" which has trapped some small fish having little or no demonstrable involvement with the events giving rise to suit other than their association with persons plaintiffs believe were larger fish in their turbulent relationship with Lamont Dozier. In addition to the more general inability of plaintiffs to state an antitrust claim discussed in Part VIII above, which alone justifies dismissal of these defendants, there are simply no specific factual allegations of wrongdoing by them. Mere generalized conclusions painted with a broad brush are insufficient.

### B.

### David Williams and the Sanders Firm

David Williams and the Sanders firm of which he was a partner were counsel to Lamont Dozier during his negotiations with ABC until the firm terminated the relationship due to perceived conflicts of interest sometime in 1974. They are referred to in the complaint in the same general fashion as the Kitch and Krasilovsky defendants,

charged with antitrust violations and other wrongs as part of the conspiracy with ABC in Counts I–XI and with negligence as attorneys for Lamont Dozier in Count XII. *See* Amended Complaint ¶ 20(a)–(1), 22, 34, 35(a)–(c), 95 and 96; Plaintiffs' Short Claim Statement ¶ 7; Plaintiffs' Statement of Disputed Issues of Fact (Kitch) ¶ 17 and 18 and (ABC) Part II(A) ¶ 2, Part II(B) ¶ 11 and 28; PFF 27, 28, 81–84, 86, 99, 129, 136(a), (e), (i), (j), (k)(i), (k)(viii)–(xv), (o), (r), (v)–(y) and 137 mirrored in various paragraphs of the Holland affidavits (Px15 and Px17).

Plaintiffs claim Williams and the Sanders firm negotiated the contract with ABC on behalf of Dozier and entered into the conspiracy with the other defendants to lure personnel under contract to plaintiffs to ABC. Williams is claimed to have received a $10,000 payment directly from ABC as part of a bonus or advance paid to Lamont Dozier after the Dozier/ABC contract was signed in August 1973. Plaintiffs allege both Williams and the Sanders firm were involved in the planning and conducting of the Wayne County litigation and the creation of Dozier's music publishing companies. Both are included in a general claim that various defendants produced records or other materials using trademarks belonging to plaintiffs. Finally, plaintiffs argue Williams and his law firm were in effect a "front" for the ABC-backed conspiracy.

In his deposition (Px23), Williams acknowledged his role as attorney for Lamont Dozier in negotiating Dozier's contract with ABC (Tr. 25–27) and his legal opinion that Dozier's contract with plaintiffs was unenforceable (Tr. 28–30). He noted meetings with plaintiffs' counsel where he demanded proof of the binding nature of Dozier's contract with plaintiffs (Tr. 19–25), as well as meetings with ABC personnel involved in the negotiations. He testified he told ABC personnel that Dozier could not afford to litigate the binding nature of his contract with plaintiffs despite his (Williams') belief it was unenforceable, but that ABC could of course litigate the matter if it so desired (Tr. 63–64). He also indicated he helped Dozier set up his music publishing compa-

nies (Tr. 30) and that he received the $10,-000 payment from ABC from Dozier's advance, which he believed to be part of his compensation for legal services rendered to Dozier (Tr. 50–51).

Plaintiffs' claims against David Williams and the Sanders firm fail on summary judgment for three reasons. First, few of plaintiffs' factual allegations are specific, or where they are specific, are unsupported by competent evidence in the record. I will accept as true plaintiffs' assertions that Williams negotiated the contract with ABC on behalf of Lamont Dozier, that he met with ABC personnel concerning those negotiations, that he was aware of ABC's desire to litigate the enforceability of Dozier's contract with plaintiffs and believed that contract was unenforceable and that he received a $10,000 payment from ABC out of an advance or loan to Lamont Dozier. These facts are acknowledged by Williams in his deposition. The only sworn testimony supporting plaintiffs' conclusory statements concerning these defendants' role in the ABC-backed conspiracy appears in the Holland affidavits, which as noted above, are restatements of plaintiffs' proposed findings of fact, are conclusory in nature and are not based on personal knowledge as required by Fed.R.Civ.P. 56(e). Once again plaintiffs ask me to go beyond inferences, which are properly to be drawn in their favor on summary judgment, to speculation.

Second, as attorneys for Lamont Dozier, Williams and the Sanders firm are properly within the ambit of the *Tillamook Cheese* doctrine discussed in Parts V and VI above. Nothing in the record indicates these defendants acted in any role other than as legal advisers to Lamont Dozier in the same manner as the Kitch and Krasilovsky defendants. As to Count XII, the negligence claim must be dismissed under *Friedman v. Dozorc, supra,* as it was dismissed against the Kitch and Krasilovsky defendants.

Third, the general inability of plaintiffs to make out an antitrust claim, discussed in Part VIII above, would call for dismissal of

Williams and the Sanders firm even if their actions took them beyond the *Tillamook Cheese* exception to antitrust liability.

In short, I am satisfied that summary judgment in favor of the non-moving defendants may properly be entered. I do not believe their failure to file motions for summary judgment altered plaintiffs' responses or proofs on summary judgment in any significant way. Plaintiffs have had an adequate opportunity to present their claims against all defendants. The claims against the "other" defendants will be dismissed. *See* note 4, *supra.*

## X.

It may seem strange that a case which has lingered for over seven years, generated almost 500 pleadings and over 500 potential trial exhibits by plaintiffs and consumed so much time and effort can boil down to so little. Whatever the motivation for bringing and continuing this lawsuit, I suspect its failure on summary judgment comes as small surprise to those associated with it. When closely analyzed, plaintiffs have thrown a "dragnet" around everyone they believed was associated with their falling out with Lamont Dozier in 1973—his companies, associates, fellow artists, manager, business agent, attorneys and new employer. With general factual allegations rarely specific to individual defendants and employing conclusory "buzz" words—though with virtually no documentary evidence—plaintiffs seek to rest the downfall of their business, however caused, with these defendants.

Why this case has taken seven years to unravel is still a mystery to me. The court, due to unavoidable docket transfers and perhaps my not keeping tight enough reins on the lawyers, deserves some of the blame. All parties, including defendants, often lost sight of the forest for the trees, pursuing lateral by-ways rather than seeking to move the case to resolution. Whether these were tactical decisions is not for me to say; I observe only that they consumed large amounts of legal and judicial time to very little end.

Nonetheless, the process I envisioned in Pretrial Order No. 5 has played itself out and plaintiffs have failed to demonstrate a case on summary judgment. Accepting plaintiffs' version of the facts as true where competently supported under Fed.R.Civ.P. 56, and drawing all reasonable inferences in their favor, antitrust claims, Lanham Act claims and negligence claims are simply not made out on this record absent sheer speculation. Pendent jurisdiction over the other state law claims, as noted in note 4, *supra,* should not and will not be exercised.

Accordingly, summary judgment is granted in favor of the 27 remaining defendants and this case will be dismissed.[5] An appropriate order will be entered.

---

**5.** As noted in Part II(B) above, plaintiffs' motion for entry of a default judgment against David Williams, the Sanders firm and Reginald Dozier will be denied in light of this opinion. In addition, the following pending motions will be denied as moot:

1. Plaintiffs' motion to disqualify the law firm of Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C. as counsel for the Kitch defendants;

2. Plaintiffs' motion to disqualify the law firm of Sidley & Austin as counsel for the ABC defendants;

3. Plaintiffs' motion for relief from Pre-Trial Order No. 11;

4. The ABC defendants' motion to compel plaintiffs to further answer their first set of interrogatories;

5. The Kitch defendants' motion to strike plaintiffs' answers to their second set of interrogatories; and

6. The Kitch defendants' motion to strike plaintiffs' exhibit list, supplemental exhibit list and expert witness list.

Pre-Trial Order No. 18 ¶ 1–3, ordering the ABC defendants to respond to certain discovery requests, which was stayed by Pre-Trial Order No. 20 pending decision on their motion for summary judgment, will be vacated.

The only remaining motion appears to be the ABC defendants' motion for costs regarding the deposition of Clarence Tucker. *See* Memorandum dated February 2, 1982. The ABC defendants shall advise the deputy clerk within ten (10) days whether they wish to proceed on this motion.