Andrew **PROVENZINO** et al., Plaintiffs,

v.

**MERCHANTS FORWARDING,** a Michigan corporation, et al., Defendants.

Civ. A. No. 36789.

United States District Court,
E. D. Michigan, S. D.

Sept. 7, 1973.

Ronald Reosti, Detroit, Mich., for plaintiffs.

R. Ian Hunter, Detroit, Mich., William B. Elmer, St. Clair Shores, Mich., David Loeffler, Milwaukee, Wis., Arnold Burke, Chicago, Ill., Edward Sanders, James P. Hoffa, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action by plaintiffs Provenzino, Leavitt and Clemenson against Merchants Forwarding, Lee Brothers, Yellow Freight Systems/Steel Division, International Brotherhood of Teamsters, and numerous named individual members of the Teamsters in their official capacities. Plaintiffs have asked this court to enjoin defendants from threatening, harassing or intimidating them through the use of physical violence and economic deprivation, and to award them damages for the losses incurred as a result of defendants' alleged illegal conduct.

All of the named defendants have filed motions asking this court for summary judgment. The motions were submitted upon the pleadings, affidavits, depositions, answers to interrogatories and the briefs and arguments of the parties.

Jurisdiction is conferred on this court pursuant to 29 U.S.C. § 185.

Plaintiffs alleged, in their original complaint, the defendant unions, employers and employers' associations had conspired to prevent the plaintiffs from participating in union activities through democratic processes. Plaintiffs Provenzino and Leavitt had been discharged for conduct violative of union contracts; plaintiff Clemenson was involved in a seniority lay-off proceeding. They alleged the unions did not represent them fairly at the various administrative hearings; the unions had not protected the best interests of the union membership; and that the unions, employers and employer associations had conspired to hinder them in their union activities through harassment and intimidation.

In plaintiffs' amended complaint the employer associations were dropped as defendants and all allegations of a conspiracy between the unions and employers were deleted.

The facts relevant to each plaintiff in this case are drawn from the affidavits and depositions submitted and stated most favorably to the plaintiffs, the non-moving parties.

Plaintiff Provenzino has been a member of the International Brotherhood of Teamsters and Teamsters Local No. 299 for approximately twenty-one (21) years. Since 1961 he has been involved in activities which opposed the incumbent leadership of the local union. He was a member, and later a leader, of the Teamsters Betterment League and the Unity Committee 299. He had also been a leader in organizing and communicating with similar organizations in other Teamster local unions throughout the country.

Provenzino participated in the publication of "Team Mate" magazine, which contained material critical of the incumbent local union leadership. He also ran for office in several local union elections.

Provenzino was employed by defendant, Merchants Forwarding Company, from 1951 until July 12, 1968. He was a union steward at Merchants Forwarding Company from approximately 1961 until July 12, 1968.

On July 12, 1968, he was discharged for allegedly leading and participating in an unauthorized walk-out by the employees of Merchants Forwarding Company.

Pursuant to the collective bargaining agreement between the union and Merchants Forwarding Company, he filed a timely grievance protesting his discharge. After attempts by officials and agents of Local 299 to reinstate him with Merchants personnel failed, the

grievance was taken to the Joint Area Grievance Committee.[1] At the hearing before the Joint Area Grievance Committee, Provenzino was represented by Gene Page, a union business agent, and George Roxborough, a union trustee.

[1]. The contract provisions applicable to all parties in this case are Article 7 of the National Master Freight Agreement and Articles 42 and 43 of the Central States Area Over-the-Road Supplemental Agreement, which provide in pertinent part as follows:
*Article 7.*
*Local and Area Grievance Machinery.*
Provisions relating to Local, State and Area Grievance Machinery are set forth in the applicable Supplements to this Agreement.
The procedure set forth in the Local, State and Area Grievance Machinery and in the National Grievance procedure may be invoked only by the authorized Union representative or the Employer. Authorized representatives of the Union may file grievances alleging violation of the Agreement under local grievance procedure, or as provided herein. Time limitations regarding the filing of grievances if not set forth in the respective Supplemental Agreements, must appear in the Rules of procedure of the various grievance committees and shall apply equally to Employers and Employees.
*Article 42.*

*Grievance Machinery Committee.*
*Joint State Committees*
The Employers and the Unions in each of the following states shall together create a permanent Joint State Committee for such state: Michigan, Ohio (including Wheeling, West Virginia), Indiana, Kentucky (including West Virginia except Wheeling), Illinois, Wisconsin, Minnesota; Iowa, Missouri, North Dakota, South Dakota, Nebraska, Kansas, and Denver, Colorado. The Joint State Committee shall consist of an equal number appointed by Employers and Unions but not less than three from each group. Each member may appoint an alternate in his place. The Joint State Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings. Each Joint Committee shall have jurisdiction over disputes and grievances involving Local Unions or complaints by Local Unions located in its state.
*Joint Area Committees*
The Employers and the Unions shall together create a permanent Joint Area Committee which shall consist of delegates from the Central States Area. This Joint Area Committee shall meet at established times and at a mutually convenient location.
*Contiguous Territory*
If a dispute or grievance arising out of operations under this Agreement involves a Local Union situated in contiguous territory, such dispute or grievance shall be referred to any of the above Joint State Committees for handling by the Executive Secretary of the Central States Drivers Council, and after such reference shall be handled under the usual procedure of that Joint State Committee.
*Function of Committees*
It shall be the function of the various committees referred to above to settle disputes which cannot be settled between the Employer and the Local Union in accordance with the procedures established in Section 1 of Article 43.
*Attendance*
Meetings of all Committees referred to above must be attended by each member of such Committee or his alternates.
*Examination of Records*
The Local Union, Joint State Committee, or the Joint Area Committee shall have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute or records pertaining to a specific grievance.
*Article 43.*

*Grievance Machinery and Union Liability.*
General
The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, or any controversy which might arise.
Disputes shall first be taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:
(a) Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken to the Joint Area Committee. Such decision shall be final and binding on both parties.
(b) Where a Joint State Committee is unable to agree or come to a decision on a case, it shall, at the request of the Union or the Employer involved, be appealed to the Joint Area Committee at the next regularly constituted session. Where the Joint Area Committee by majority vote settles a dispute such decision shall be final and binding on both parties with no further appeal.
\* \* \* \* \*
(d) It is agreed that all matters pertaining to the interpretation of any provisions of this Agreement may be referred by the State Secretary for the Union or the

There is a factual difference as to the degree of representation Provenzino received from Page and Roxborough. Plaintiffs contend the representatives read the grievance and sat down. Defendants contend Page and Roxborough both spoke for Provenzino and argued he had not violated the collective bargaining agreement. At the hearing Provenzino also spoke in his own behalf. The Committee heard witnesses on behalf of Provenzino. The Committee also refused to accept some witnesses and affidavits submitted by Provenzino, ruling they were repetitious.

The discharge was upheld by the Joint Area Grievance Committee by a majority vote.

Subsequent to the hearing before the Joint Area Grievance Committee, Provenzino petitioned the N.L.R.B. but was denied relief.

Plaintiff Leavitt has been a member of the International Brotherhood of Teamsters, and Teamsters Local No. 299 since 1952.

He was employed by defendant Yellow Freight Systems/Steel Division and its predecessor company from 1956 until July 13, 1968, as an owner-operator and operator.

During 1967 Leavitt was an active member and leader of "F.O.N.T.A.", an association of steel haulers within the international union which was opposed to the policies of the defendant unions, as they affected steel haulers. In 1967, he played a leading role in a strike by steel haulers which was conducted despite the opposition of defendant unions and Yellow Freight Systems/Steel Division.

In 1968, Leavitt became active in union political activities as a supporter of plaintiff Provenzino. He was also a member of the United Committee 299 and participated, as a candidate, in union delegate elections in 1971.

On July 13, 1968, Leavitt was discharged for alleged violation of § 3G, Uniform Rules and Regulations, for repeated failure to provide Yellow Freight with his unlisted telephone number. He contends he was forced to resort to an unlisted number when, after the settlement of the 1967 strike with defendant Yellow Freight, he and his wife received numerous threatening phone calls made by anonymous callers. To obviate the need for a phone, Leavitt offered an alternative means of contact, i. e., he would sleep in his truck, near the dispatch shack of defendant Yellow Freight, where he could be reached in person. This method was considered inadequate by Yellow Freight and Leavitt was discharged. He immediately filed a grievance.

The grievance process in the discharge of Leavitt was the same as the process involved in the Provenzino discharge. After negotiations by union representatives and employer personnel failed to reinstate Leavitt, the grievance was heard by the Joint Area Grievance Committee. The composition of the Joint Committee was similar to the Committee in the Provenzino case. Leavitt was present at the hearing, accompanied by his attorney, and read a

State Secretary for the Employers at the request of either the Employers or the Union, parties to the issue, with notice to the other Secretary, to the Joint Area Committee at any time for final decision. At the request of the Company or Union representative, the Joint Area Committee shall be convened on seventy-two (72) hours' notice to handle matters so referred.

(e) Deadlocked cases may be submitted to umpire handling if a majority of the Joint Area Committee determines to submit such matter to an umpire for decision.

Otherwise either party shall be permitted all legal or economic recourse.

(f) Failure of any Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any state, or failure to comply with any final decision withdraws the benefits of ARTICLE 43.

\* \* \* \* \*

(h) The procedures set forth herein may be invoked only by the authorized Union representative or the Employer.

statement into the record in support of his position. It is unclear whether or not a union official was present at the hearing on behalf of Leavitt. The Joint Committee upheld the discharge. He also petitioned the N.L.R.B. and was denied relief.

Plaintiff Clemenson has been a member of the International Brotherhood of Teamsters and Local No. 299 since 1948. His political activity within the union began in 1968 when he became an active supporter of plaintiff Provenzino. He was a member of the Unity Committee 299 and "P.R.O.B.E.", but never ran for any union office.

Clemenson was employed by defendant Lee Brothers commencing in 1962 and continuing to the present. He worked regularly through April, 1970, at which time there was a strike which he alleges the union leadership opposed. The strike lasted from April 9, 1970, through April 15, 1970, when it was settled and a new three (3) year contract was consummated.

On August 14, 1970, Clemenson received a telegram which he interpreted to be a letter of discharge, but which defendant Lee Brothers interpreted as merely a layoff. He immediately filed a grievance against the alleged discharge. This grievance was joined with numerous previous grievances filed by Clemenson between 1967 and 1970.

The grievance process used for Clemenson was the same as the process in the Provenzino and Leavitt discharges.

In March, April and June, 1970, the Joint Area Grievance Committee finally heard Clemenson's grievances.[2] Clemenson was present at the hearing and spoke in his own behalf. A union representative, E. (Tip) Rumsby, was also at the hearing. Clemenson contends, however, that Rumsby merely presented the

grievances. The Joint Area Grievance Committee upheld the action by Lee Brothers but termed the action a layoff and not a discharge.

Defendants contend summary judgment is appropriate in this case for basically two reasons. Since all plaintiffs followed the grievance procedure authorized by the particular collective bargaining agreement, the decisions by the Joint Area Grievance Committees are contractually final and binding on all parties. Defendants also contend there has been no allegation of evidence that the Joint Area Grievance Committees' decisions were "tainted" by fraud, dishonesty, or bad faith; and lacking such allegations or evidence, this court may not relitigate the merits of the administrative decisions.

Plaintiffs contend this court is not bound by the decisions of the Joint Area Grievance Committees for two reasons. First, the representation of the plaintiffs by the local union representatives was perfunctory, and they were therefore denied fair representation before these committees. Second, the grievance committees were biased and reached decisions against the weight of the evidence.

█ The facts established by affidavit and deposition, and submitted in support of and in opposition to the motions for summary judgment, will be taken in the light most favorable to the plaintiffs.

█ A discharged employee claiming rights under a negotiated collective bargaining agreement must utilize the grievance procedures contained in the agreement to obtain redress for the alleged contract violations. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *See, also,* Republic Steel

---

2. All the Clemenson grievances were collected in December, 1970, but were originally assigned to the wrong grievance committee. In January, 1971, they were assigned to the Joint Area Grievance Committee, but the company was not notified. In February, 1971, Mr. Crittenden, attorney for the company, met with Rumsby and Smith, business agents for Local No. 299, and with Clemenson and his attorney, Mr. Reosti, in an attempt to settle the grievances. The attempts, however, failed.

Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

■ It is well settled that these grievance procedures, leading ultimately to arbitration, are to be given the broadest possible construction. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It is settled that the law encourages resolution of disputes by the processes established as a result of collective bargaining agreements.

The standard required for "fair representation" by union officials in grievance proceedings is now well established. In Vaca v. Sipes, *supra,* union officials were sued in state court by a union member who alleged wrongful discharge by his employer in violation of the collective bargaining agreement and the union's arbitrary refusal to take his grievance to arbitration under the fifth and final step of the bargaining agreement's grievance procedures. The employee, whose duties required strenuous activity, was dischaged on the ground of poor health. During the fourth grievance step, the union sent the employee to a physician for a complete examination. The report was unfavorable to the employee, and the union decided not to take the grievance to arbitration.

■ In reversing the State Supreme Court, the court stated "a union breaches its duty of fair representation when its conduct toward a member of the designated unit is arbitrary, discriminatory or in bad faith, but it does not breach that duty merely because it settles a grievance short of arbitration." 386 U. S. at 190–193, 87 S.Ct. at 916–918.

The *Vaca* test has been expressed in like terms by other courts. In Morris v. Werner-Continental, Inc., 466 F.2d 1185, 1190–1191 (6th Cir. 1972), the court stated:

". . . that so long as there is an absence of fraud or bad faith or demonstrated bias or collusion, the decision by the arbitrators . . . , is final and binding and courts are generally powerless to interfere." *See, also,* Lewis v. Magna American Corp., 472 F.2d 560 (6th Cir. 1972).

Courts have been reluctant to say union members received fair representation when the applicable contracts did not provide for arbitration, St. Clair v. Local U. No. 515 of Int. Bro. of Teamsters, 422 F.2d 128 (6th Cir. 1969); Rowan v. Sober (Civil Action No. 37276, Oct. 5, 1972); or when the union, under certain circumstances, refused to process a grievance beyond the initial proceedings. Day v. United Auto., Aero. & Agr. Imp. Wkrs., Local 36, 466 F.2d 83 (6th Cir. 1972). Where, however, grievances have been accepted by the union and processed to completion, the decisions are final and binding unless there have been violations of the standards established in *Vaca.*

■ A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Simberlund v. Long Island R.R. Co., 421 F.2d 1219 (2d Cir. 1970). Thus, whether a bargaining representative has breached its duty of fair representation depends upon the facts of each case. Balowski v. Int'l U., United Auto., Aero. & Agr. Imp. Wkrs., 372 F.2d 829 (6th Cir. 1967).

■■ In the present case, union officials for all three (3) plaintiffs processed plaintiffs' grievances and, prior to arbitration, took all available steps to have the plaintiffs reinstated by their various employers. The plaintiffs were all present and actively participated before the Joint Area Grievance Committees. The allegation that the union's position before the Committees was restrained, or neutral, does not establish

unfair representation. Bieski v. Eastern Automobile Forwarding Co., 396 F. 2d 32 (3rd Cir. 1968). Indeed, proof that a union might have acted negligently or exercised poor judgment is not enough to support a charge of unfair representation. Dill v. Greyhound, 435 F.2d 231 (6th Cir. 1970). There is nothing in the record to permit a conclusion that there was "bad faith or demonstrated bias or collusion", Morris v. Werner-Continental Inc., *supra*.

■ Complete satisfaction with the degree of representation union members receive before arbitration panels is hardly to be expected. The fair representation standard, however, deals not with the degree of satisfaction the union member received from his union representative, but with whether the union's conduct was "arbitrary, discriminatory or in bad faith." Situations amounting to nothing more than visceral reactions by parties adversely affected by arbitration panels do not violate the "fair representation" standard.

The record before this court does nothing more than establish that there is a difference of opinion between the parties. Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186–187 (9th Cir. 1962); Balowski v. Int'l U., United Auto., Aero. & Agr. Imp. Wkrs., 372 F. 2d 829, 883 (6th Cir. 1967).

Plaintiffs have also alleged the Joint Area Grievance Committees were biased against them and reached decisions which were clearly against the weight of the evidence.

Nowhere in the pleadings, affidavits, depositions or answers to interrogatories, however, have the plaintiffs supported this allegation. There have been no allegations concerning specific activity by any member of the various Committees, or of union-employer collusion on the Committees.

■ The standard to be applied in passing on motions for summary judgment was stated in Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962), as follows:

"In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the *movant*. Further, the papers supporting the *movant* are closely scrutinized, whereas the opponent's are indulgently treated. 6 J. Moore's *Federal Practice* § 56. 15(3) at 2337–2338.

"It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . .', 6 J. Moore's *Federal Practice* § 56 11(1) at 2143. *See, also,* Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)."

■ The mere hope, however, by parties opposing summary judgment, that evidence may turn up to support their position does not suffice to warrant a trial. Appolonio v. Baxter, 217 F.2d 267, 271 (6th Cir. 1954); 6 J. Moore, *Federal Practice* § 56.15 (1.–06) at 2305. A party opposing the motion must present facts of a substantial nature, Beidler & Bookmyer v. Universal Ins. Co., 134 F.2d 828, 831 (2d Cir. 1943), and may not rely on conclusions of law, Pittsburgh Hotels Assn. Inc. v. Urban Redevelopment Authority of Reserve Bank, 114 F.2d 438 (2d Cir. 1962), cert. denied, 372 U.S. 916, 83 S. Ct. 730, 9 L.Ed.2d 723 (1963), or mere suspicions, Banco De Espana v. Federal Reserve Bank, 114 F.2d 438 (2nd Cir. 1940).

■ The bald allegation that the Joint Area Grievance Committees were biased against the plaintiffs is merely conclusory and insufficient to withstand motions for summary judgment. Balowski v. Int'l U., United Auto., Aero. & Agr. Imp. Wkrs., 372 F.2d 829 (6th Cir. 1967).

This litigation should end. Ample opportunity has been given to develop any real issues. There are none supported by any facts within the test of *Bohn* to justify additional time and effort by the court and the parties.

For the foregoing reasons, the defendants' motions for summary judgment are granted.

So ordered.