**Marty STEINBERG and Gene D'Arpe, Plaintiffs,**

v.

**ST. REGIS/SHERATON HOTEL, Defendants.**

No. 82 Civ. 6630 (GLG).

United States District Court, S.D. New York.

March 30, 1984.

**422**

Jacob Rabinowitz, New York City, for plaintiffs; Benjamin Shedler, Sol Mermelstein, New York City, of counsel.

Solin & Breindel, P.C., New York City, for defendants; Daniel R. Solin, Mark L. Weyman, New York City, of counsel.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The Court is confronted in this employment discrimination case with two motions which follow closely upon the heels of a jury verdict in favor of the defendant. In the first motion, the plaintiffs seek a new trial, based on a claim that the Court made erroneous evidentiary rulings during the trial. In the second motion, the prevailing defendant seeks attorney's fees.

The complaint contained two claims for relief. The first was a claim that the defendant, St. Regis/Sheraton Hotel (the "Hotel"), had discriminatorily discharged plaintiff Steinberg upon the basis of his religion (Jewish) and plaintiff D'Arpe on the basis of his national origin (Italian), in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17 (1976). The

second claim was that the plaintiffs had been discriminatorily discharged on the basis of their age, in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621–34 (1982).

The plaintiffs were entitled to a jury trial for their age discrimination claim but not for their Title VII claim. When the defendant moved for a bifurcated trial, the Court denied the motion but did so with the proviso that evidence relating solely to the Title VII claim would be presented to the Court out of the hearing of the jury and, for the most part, after the jury had begun deliberating on the age discrimination claim. As it turned out, however, this scenario was played out only half way. Once the jury retired to deliberate on the ADEA claim and the plaintiffs were directed to go forward with whatever evidence remained as to the Title VII claim, they moved to withdraw that claim, with prejudice. The Court granted the motion, even though the last-minute abandonment of the claim caught both the Court and the defendant by surprise.

### Plaintiffs' Motion for a New Trial

During the trial the plaintiffs offered crudely drawn charts showing the names and ages of those serving as the Hotel's department heads at the start of the plaintiffs' employment as well as the names and ages of the ultimate successors to all of those department heads who were later replaced. The defendant objected to these charts on numerous grounds, including the fact that the great majority of the individuals who had left the Hotel during the relevant period had not been discharged, but rather either had been transferred to other hotels in the Sheraton chain or had resigned. Because of this objection, the Court required the charts to be amended to include the reasons for the employees' departures. After the plaintiffs so amended the charts, they stated that they wished to have certain of the employees who were listed as having voluntarily resigned testify that they had, in fact, been forced to resign and replaced by younger employees.

The plaintiffs now contend that during the trial the Court "consistently and regularly refused to permit testimony with respect to persons less than 40 years of age." Sedler Affidavit at 2. They also contend that evidence concerning forced resignations of persons under 40 would have been appropriate evidence to impeach the credibility of the Hotel's records.

The plaintiffs' description of the Court's ruling concerning these matters is inaccurate. The Court did not forbid testimony from persons under 40 (and, indeed, the age of the witnesses was unimportant *per se*). The actual, narrow ruling of the Court was that the plaintiffs would not be permitted to introduce testimony from persons under 40 concerning their belief that they themselves had been forced to resign so that they could be replaced with younger people, because such evidence would be both confusing and prejudicial. In addition, the Court gave the plaintiffs the opportunity to make a specific offer of proof as to the testimony of any such witness so that the Court could determine on an individual basis whether the probative value of the evidence offered exceeded the negative factors noted above.

The plaintiffs, however, never made any offers of proof, foregoing the opportunity left open by the Court, and thereby placed themselves in an extremely weak position to argue at this time that the Court did make a final ruling against the admission of the desired testimony. Furthermore, even if the plaintiffs had made a proper offer of proof with respect to one or more former employees who were in their 20's or 30's when they left the Hotel's employ and who would testify that the Hotel had forced them to resign and, in their opinion, had done so in order to replace them with even younger persons, their testimony would have had little, if any, probative value and almost certainly would have been confusing to the jury as well as unfairly prejudicial to the defendant. First of all, persons under 40 are not members of the class protected under the ADEA, *see* 29 U.S.C. § 631(a) (1982), and, although testimony as to their treatment is not directly relevant, it might easily be perceived as being so by a jury. As such, it should have been excluded under Rule 403 of the Federal Rules of Evidence.

Secondly, the admission of this irrelevant testimony would have only aggravated the problem created by the Court's having already admitted statistical evidence concerning the ages of the ultimate successors to the original department heads. Those statistics probably should not have been allowed by the Court (and would not have been but for representations of proof made by the plaintiffs' counsel that were never fulfilled), since comparative statistics must be relevant and meaningful, *see, e.g., Mayor of Philadelphia v. Education Equality League*, 415 U.S. 605, 620, 94 S.Ct. 1323, 1333 (1974), yet the statistics offered at trial were not. Contrasting hiring ages with termination ages "is virtually useless in any realistic analysis of a claim of disparate treatment because of age." *Pirone v. Home Insurance Co.*, 559 F.Supp. 306, 312 (S.D.N.Y.1983) (quoting *Laugesen v. Anaconda Co.*, 510 F.2d 307, 313 n. 4 (6th Cir.1975)). It is "the natural order of things" that new employees on the job are younger than the persons they replace, particularly where the persons replaced have been employed for a number of years and are by necessity older. *Id.* Moreover, to add to these statistics proof that persons in their 20's and 30's were being discriminatorily terminated from their employment would have been to undercut logically the plaintiffs' claim that the Hotel was discriminating against individuals over 40. *See, e.g., Kahn v. Pepsi Cola Bottling Group*, 547 F.Supp. 736, 739 (E.D.N.Y.1982) (that younger employees were dismissed along with plaintiff refuted his claim of age discrimination under the ADEA).

Finally, the contention that plaintiffs should be allowed to introduce evidence contradicting the defendant's records for purposes of impeaching the defendant is frivolous. It was the plaintiffs who offered the records in the first place. Hence, what they were trying to do was to im-

peach their own evidence on what was clearly a collateral matter.

Age discrimination, in general, is a matter that the Court does not take lightly; however, for all the reasons discussed above, the plaintiffs' challenge to the Court's evidentiary rulings is found to be unpersuasive, and their motion for a new trial must be denied.

### Defendant's Motion for Attorney's Fees

We now turn to the issue of the defendant's application for attorney's fees. This was clearly one of the most frivolous employment discrimination actions ever brought. The fact that it survived a summary judgment motion merely indicates that at the time that motion was brought, though the case seemed very weak, there did appear to be genuine issues of fact sufficient, under the stringent standards of this circuit, to warrant denial of the motion. Indeed, the unfortunate irony of this case is that by giving the plaintiffs the benefit of the doubt as to the claims of proof that they made in their opposition to that motion, as the Court was required to do, we are now confronted with the defendant's very compelling application for attorney's fees.

At trial, there was virtually nothing to support the plaintiffs' claims other than their own self-serving testimony. Even that was inconsistent and harmful to their case at times, such as when one of them testified that the person allegedly responsible for their discharges was prejudiced against everyone. Obviously, an employer who discriminates against everyone discriminates against no one. Beyond the plaintiffs' own unpersuasive testimony, there were numerous other facts that completely undercut their claims. For example, the fact that the Hotel's senior official in the New York area is of the same religious persuasion (Jewish) as plaintiff Steinberg, or the fact that plaintiff D'Arpe's immediate superior in the security department (who agreed with the decision to discharge D'Arpe) and D'Arpe's ultimate replacement are both of the same national origin as D'Arpe (Italian), or the fact that

both plaintiffs were 48 years old when they were discharged and replaced by individuals who were either the same age or older. Given these facts and others, it is no wonder that the Equal Employment Opportunity Commission sometime ago found no reasonable cause to believe the plaintiffs' claims. In such a case, the defendant's demand for attorney's fees must be taken seriously. The very purpose of permitting the awarding of attorney's fees to prevailing defendants in certain circumstances is to protect them from being forced to litigate claims that have no legal or factual basis. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978).

Before going any further, though, the Court notes that there is an anomaly in the statutory provisions concerning attorney's fees in Title VII cases and ADEA cases. While under Title VII, either the plaintiff or the defendant can be awarded attorney's fees, 42 U.S.C. § 2000e–5(k), such fees are authorized only for plaintiffs under the ADEA, 29 U.S.C. § 626(b) (1982). The courts, however, have addressed this problem in certain instances by holding that such fees may be awarded to prevailing defendants in age discrimination cases under the "bad faith" exception to the general "American Rule" against awarding any attorney's fees. *See, e.g., Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958, 962 (8th Cir.1978) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

In this case, the plaintiffs' counsel's initial response to the defendant's demand for fees is to claim that the Court has already denied the application as it relates to the Title VII claim, which was withdrawn at what was essentially the close of trial. This claim, however, is simply not true. In accordance with 42 U.S.C. § 1988 (Supp. V 1981), the Court merely reserved decision on that aspect of the application until after the jury rendered its verdict on the ADEA claim. Obviously, if the plaintiffs were to prevail on the latter claim, they would be

entitled to at least a set off against any attorney's fees awarded to the defendant on the Title VII claim. Thus, the Court ruled that it would consider applications for attorney's fees for both claims at the conclusion of trial, which it now does.

█ The defendant's counsel seeks $74,580.50 in legal fees for defending against the claims of both plaintiffs on both grounds and indicates that it is not possible to segregate and identify the expenses incurred with respect to each claim. Under the circumstances, the Court has every reason to believe that it would indeed be impossible to break down the services rendered and fees incurred in a claim-by-claim manner. Moreover, since the Court finds that the age discrimination claim was not only meritless but frivolous and vexatious as well, there is no need for such a breakdown. Under section 706(k) of Title VII and under the bad faith exception to the American Rule, the Court has the discretionary power to award a prevailing defendant attorney's fees in an action that is unreasonable, frivolous, meritless, or vexatious. *Carrion v. Yeshiva University*, 535 F.2d 722, 726–27 (2d Cir.1976). Furthermore, a defendant may be considered a prevailing party even if the plaintiff voluntarily dismisses a groundless complaint. *Cf. Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 703 F.2d 700, 707 (3d Cir.1983) (discussing the meaning of "prevailing party" under the Equal Access to Justice Act, 28 U.S.C. § 2412). Thus, despite their apparent attempt to thwart the defendant's recovery of attorney's fees by dropping the Title VII claim after the jury retired to deliberate, the plaintiffs and their attorney are nonetheless subject to such an assessment. At no time did the plaintiffs offer any substantiating evidence for either claim. In such a situation, the Court is justified in determining that the claims were meritless and unreasonable. *See, e.g., Gerena-Valentin v. Koch*, 554 F.Supp. 1017, 1021 (S.D.N.Y.1983).

Although the Court finds that the Title VII claim had even less merit than the age discrimination claim (which became more and more implausible as the trial went on), both matters stand on the same footing for purposes of this motion. Even if the plaintiffs' counsel was unaware at the commencement of suit that both claims were insupportable, he should have quickly realized this fact as discovery progressed. For example, the defendant's records revealed that almost all discharged department heads in the protected class were replaced by contemporaries. Nevertheless, the plaintiffs and their counsel went all the way to trial on the claims. Such a course of action provides ample justification for the assessment of attorney's fees. *See, e.g., Christiansburg Garment, supra*, 434 U.S. at 422, 98 S.Ct. at 701 (plaintiff should be assessed attorney's fees where it is found "that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so").

Finally, we come to the question of the amount of fees that are appropriate under the particular circumstances of this case. The amount awarded must fulfill the deterrent purpose of the statute, but should not cause financial ruin to the plaintiffs. *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1029 (2d Cir.1979).

It is not disputed that the hours claimed were expended. Indeed, the parties were before the Court with great regularity prior to trial. The Court also finds that the hourly charges involved (with the possible exception of the paralegal charges, which seem to embody a profit aspect) are reasonable for the standard of performance of the attorneys involved. Furthermore, the Court notes that the plaintiffs' argument that it does not require much to defeat a patently frivolous claim is spurious at best. Considerable time and energy are often required to establish to the satisfaction of the trier of fact that a matter is clearly lacking in substance. *Cf. North American Foreign Trading Corp. v. Zale Corp.*, 83 F.R.D. 293, 298–99 (S.D.N.Y.1979) (fact that court found plaintiff's motion to disqualify defense counsel to be frivolous did

not preclude a finding that defense counsel was compelled to expend a significant amount of time in defeating the claim and thus was entitled to attorney's fees and costs under 28 U.S.C. § 1927). Certainly, such a commitment of legal resources was called for in this case, where the plaintiffs were able to withstand the defendant's motion for summary judgment.

Considering, however, the financial positions of the two plaintiffs, who are middle-class, working men of no great wealth, the assessment of $74,580.50 in legal fees would not be reasonable. Hence, the Court will exercise its equitable powers to reduce the amount of fees requested by the prevailing party. The defendant is awarded $30,000 in attorney's fees, $20,000 of which is to be assessed against both plaintiffs, with judgment to be entered individually against each in the amount of $10,000. The remaining $10,000 is to be assessed against the plaintiffs' attorney, Jacob Rabinowitz, who needlessly and vexatiously required the defendant and its counsel to expend so much money to defend a patently frivolous claim.

With regard to the assessment against Mr. Rabinowitz, it should be noted that the power of a court to require an attorney to personally satisfy an award of legal fees is authorized on several grounds, all of which are applicable here. First, the attorney may be held liable under 28 U.S.C. § 1927 (1982), which provides: "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* Conduct that may subject counsel to being personally assessed such fees includes "a serious and studied disregard for the orderly process of justice," *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969), and the bringing of an action in "bad faith," *West Virginia v. Charles Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). With regard to both the ADEA claim and the Title VII claim, the plaintiffs' counsel had knowledge of all the necessary facts early on in the litigation, if not before suit was filed, and thus could have continued such groundless claims only in "bad faith" and with complete disregard for the valuable time and resources of the Court.

Second, the Federal Rules of Civil Procedure provide that any attorney who signs a pleading is obliged to ascertain whether there is a sufficient factual basis to support the allegations. Fed.R.Civ.P. 11. One sanction for the violation of Rule 11 is to tax the offending attorney with his opponent's legal fees. *North American Foreign Trading Corp., supra,* 83 F.R.D. at 298. Clearly, even minimal investigation of the Title VII claim by a prudent attorney would have revealed from the onset that no real factual basis existed to support it.

Third, under its equitable powers the Court may assess an attorney for a "willful abuse of the judicial process." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). This case certainly involved such an abuse.

*Conclusion*

The plaintiffs' motion for a new trial is denied, and the defendant's motion for attorney's fees is granted. The total fees awarded amount to $30,000, of which $20,000 is assessed against the plaintiffs, and the remaining $10,000 against their attorney, Mr. Rabinowitz. Settle order.

SO ORDERED.