**George M. PILJAN, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF SOCIAL SERVICES and State Civil Service Commission, Defendants.**

**Civ. No. 76–70074.**

United States District Court, E.D. Michigan, S.D.

June 1, 1984.

Ashley Gorman of Gorman & Levine, P.C., Troy, Mich., for plaintiff.

Robert Rosenberg, Asst. Atty. Gen., Lansing, Mich., for D.S.S.

Debbie Devine, Lansing, Mich., for State Civil Service Comm.

## MEMORANDUM AND ORDER ON ATTORNEY FEES

COHN, District Judge.

### I.

This is an employment discrimination case. Plaintiff, a retired employee of the

Michigan Department of Social Services (Social Services) formerly assigned to the Wayne County Department of Social Services (Wayne County), brought suit in 1976 against Social Services, the Michigan Department of Civil Service (Civil Service), Wayne County and several high ranking state and county officials claiming he was discriminated against in work assignments and promotions because of his Slavic national origin. The individual defendants were dismissed during pretrial. At the beginning of trial Wayne County was dismissed. At the conclusion of plaintiff's proofs, the remainder of the case was dismissed under Fed.R.Civ.P. 41(b).[1]

Social Services and Civil Service have moved for attorney fees under 42 U.S.C. § 2000e–5(k) and ask that a portion of their fees be assessed against plaintiff's attorneys personally under 28 U.S.C. § 1927. The request is for $48,181.25 broken down as follows:

A. Social Services: Robert Rosenberg, attorney

  1) Services: 272.75 hours at $75 per hour     $20,456.25
  2) Travel: 102 hours at $25 per hour     $ 2,550.00

B. Civil Service: Deborah Devine, attorney

  1) Services: 305 hours at $75 per hour     $22,875.00
  2) Travel: 92 hours at $25 per hour     $ 2,300.00

Robert Rosenberg (Rosenberg) and Deborah Devine (Devine) are each assistant attorneys general with their work stations and residences in Lansing, Michigan. The request is limited to services performed between August 1981 and September 1983 in preparation for trial, in trial and for the pending motion. The time spent is itemized and Rosenberg and Devine each affirms there is no duplication in the hours described.

1. The reasons for dismissing Civil Service are described in the Memorandum And Order Dismissing State Civil Service Commission As A Defendant of July 28, 1983. The reasons for dismissing Social Services are described in the Opinion of July 28, 1983.

## II.

### A.

▪ Plaintiff does not seriously dispute the number of hours of services described or the reasonableness of the requested hourly rates. Plaintiff says that because Rosenberg and Devine are state employees the award should be limited to the actual costs of legal services to the state. This argument is without merit. *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff also says that travel time should not be allowed. Attorneys for the prevailing party are to be paid in the same fashion as attorneys who are compensated by a fee paying client. *Northcross v. Board of Education,* 611 F.2d 624, 638 (6th Cir.1979). Rosenberg and Devine customarily work in Lansing; their respective clients have their general offices in Lansing. Travel to Detroit was necessary to enable them to adequately represent their clients. The lesser hourly rate is appropriate. *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir.1983).

### B.

More importantly, however, plaintiff has filed an uncontested affidavit that he is without funds except for his pension and that he owes substantial amounts for monies borrowed from friends and relatives to sustain this case. This is a circumstance of some significance which is not adequately dealt with in Social Services' and Civil Service's motion papers. See *Hill v. BASF Wyandotte Corp.,* 547 F.Supp. 348, (E.D. Mich.1982), and *Faraci v. Hicky-Freeman Co.,* 607 F.2d 1025 (2d Cir.1979). See also, *Colucci v. The New York Times Co.,* 533 F.Supp. 1011 (S.D.N.Y.1982).

## III.

### A.

▪ In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54

L.Ed.2d 648 (1978), the Supreme Court held that for prevailing defendants in a Title VII case to be awarded attorney fees the court must find that plaintiff's case was frivolous, unreasonable or without foundation, or that plaintiff continued to litigate after it became clear his case was groundless. The reasons for dismissing the case against Civil Service and Social Services certainly implicate the groundless factor. Additional factors which support an award of attorney fees include the following: (1) on April 1, 1982 the claims against the individual defendants were dismissed as a sanction for failure to meet deadlines for discovery and preparation of the final pretrial statement; (2) there was no attempt made by plaintiff to stipulate to defendants' proposed findings of fact on civil service procedures; (3) plaintiff's exhibits at trial were incomplete; and (4) R.B. Shelton's (Shelton) pretrial deposition was the only discovery taken of any witness who testified at trial.[2]

**B.**

While it may be argued that prior to the Shelton deposition it could not be said that plaintiff's case was frivolous, unreasonable or without foundation, certainly after the Shelton deposition it should have been clear plaintiff likely had no case. Nothing in Shelton's deposition advanced plaintiff's case. On the contrary, Shelton knew almost nothing of plaintiff's particular employment circumstances. Also, nothing in the documents which were introduced in evidence supported plaintiff's allegations and the trial testimony was little more than a discovery search except for plaintiff's self-serving description of his work history and frustrations.

The only mitigating circumstance favoring plaintiff is Social Services' and Civil Service's admission that plaintiff was minimally qualified for each of the positions he aspired to and which were in issue at trial and their acknowledgement that plaintiff should be considered to have applied for each of these positions. Social Services and Civil Service in defense say that because they were compelled to make these admissions they were precluded from moving for summary judgment and that the test under *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), always involves a question of fact.

While there is authority for the proposition that the failure to move for summary judgment militates against a finding of a groundless case, *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2nd Cir.1977), there is authority to the contrary, *Steinberg v. St. Regis/Sheraton Hotel*, 583 F.Supp. 421 (E.D.N.Y.1984). A well supported motion for summary judgment requires some substance to be defeated. *Provenzino v. Merchants Forwarding*, 363 F.Supp. 168, 175 (E.D.Mich.1973). I am satisfied there was ample material in the record to support such a motion. See *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922 (1st Cir.1983) and Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues Of Material Fact*, 99 F.R.D. 465 (1983).[3]

**C.**

Social Services and Civil Service are entitled to an award of attorney's fees against plaintiff. The failure to file a motion for summary judgment is not determinative; the record satisfies the *Christiansburg* test. The question is "how much" given plaintiff's undisputed personal circumstances. The court in *Hill v. BASF Wyandotte*, *supra*, fully discussed the considerations that should govern in a case where the

---

**2.** On July 27, 1977 a motion by defendants to dismiss was granted in part and denied in part. See also the Order For Further Proceedings entered October 21, 1977 looking to the possibility of class certification.

**3.** The bench order of February 23, 1982, a transcript of which is attached as Exhibit A, was obviously designed to flush out disputed issues of fact, if any. See *Stepanischen,* 722 F.2d at 931. Unfortunately the parties went separate ways in the pretrial proposed findings of fact each filed. Additionally, so far as I can determine defendants never took the deposition of plaintiff in discovery.

plaintiff has little, if any, in the way of financial resources. I am satisfied that an award of $3,000 in attorney fees against plaintiff is appropriate to assure that the deterrent purpose of an award in favor of a prevailing defendant in a Title VII case is respected. See *Steinberg v. St. Regis/Sheraton Hotel, supra,* and *Colucci v. The New York Times, supra.*

### IV.

▮ The question of assessing a portion of the attorney fee award against plaintiff's counsel is more difficult. They exhibited earnestness and effort all out of proportion to the merits of their plaintiff's case. What they failed to do was to critically examine the merits of the case and fully inform themselves of the facts before they went to trial. The willingness to call seven present or former state and county officials as witnesses (Richard Ross, State Personnel Director; John McNeal, Director of Recruitment and Special Programs of State Civil Service; George Minerick, Director of Classifications of State Civil Service; Douglas Bramble, Personnel Director of County Social Services; Noble Kheder, Bramble's predecessor, Fred Jones, Kheder's predecessor and Glen Townsend, Personnel Director of State Social Services) without any pretrial examination of what they knew of plaintiff's claim or what their likely trial testimony would be, comes perilously close to the bad faith standard of *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). However, defendants do not charge plaintiff's counsel with bad faith but rather with "... [multiplying] the proceedings in [the] case unreasonably and vexatiously ...", 28 U.S.C. § 1927. As explained in the legislative history of the current form of § 1927, 1980 U.S.Code Cong. & Ad.News 2716, 2782, this section is designed as a sanction against dilatory litigation practices and is intended to require attorneys to satisfy personally the excess costs attributable to their misconduct. In *United States v.*

*Ross,* 535 F.2d 346 (6th Cir.1976), the court defined "unreasonably and vexatiously" to mean "an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court", 535 F.2d at 349. As explained in *Colucci v. The New York Times, supra,* care must be taken in assessing fees under this standard less attorneys be deterred from their duty to "represent [a] client zealously". *Model Code of Professional Responsibility* EC7–1 (1979).

▮ While I am satisfied that in considerable measure plaintiff's counsel were responsible for this case "turn[ing] into a forum for [plaintiff] to express his frustration and dissatisfaction with his lack of progress in County Social Services in the 1970's",[4] I am also satisfied that plaintiff's counsel's conduct of the case was not so egregious that they should be charged with a portion of defendants' attorney fees. Nowhere in the history of this case did defendants' counsel ever suggest that plaintiff's counsel were deliberately delaying its progress. Nowhere in their motion papers do defendants break out the excess costs they suggest were caused by plaintiff's counsels' improper conduct of the case. Lack of competence does not justify a § 1927 sanction. Plaintiff's attorneys "did not conduct ... [this] litigation in an abusive manner; the real problem with this case is that it was filed at all". *Public Interest Bounty Hunters v. Board of Governors of the Federal Reserve System,* 548 F.Supp. 157, 164 (N.D.Ga.1982).

### V.

In summary then defendants are entitled to an award of $3,000 in attorney fees to be charged to plaintiff. In all other respects their motion for attorney fees is denied.[5]

SO ORDERED.

### EXHIBIT A

This case commenced in 1976. Since that time, the parties have been struggling to

---

**4.** Opinion of July 28, 1983 at 31.

**5.** By an order dated May 1, 1984 defendants were awarded costs in the amount of $1,539.14.

bring it to issue and put it in the form so that it can be tried.

As early as June 11, 1979, plaintiff, through predecessor counsel, filed a proposed final pre-trial order. This Court, on January 15, 1981, filed Pre-Trial Order No. 1, which anticipated a final pre-trial conference on April 14, 1981.

On May 18, 1981, the Court entered an order denying the motion to amend the pre-trial order for additional discovery, and scheduled a final pre-trial conference on June 23, 1981.

Earlier, through present counsel, plaintiff, on January 23, 1981, filed a Plaintiff's Proposed Theory of Liability. In anticipation of the June 23, 1981 final pre-trial conference defendants filed a Pre-trial Statement on April 14, 1981. On June 23, 1981, plaintiff filed a Pre-trial Statement and an exhibit list.

Apparently because there were additional depositions to be taken, the parties were unable to complete the final pre-trial on June 23, 1981. Because the Pre-trial Statements filed in the Spring were separate documents and the Court looked for a single document, an integrated document, the Court on November 6, 1981, entered Pre-trial Order No. 2, which was set for today, the final pre-trial conference, and anticipated that the parties would exchange, perhaps, joint pre-trial statement in December and January. As this has not been done, it's not clear to the Court what remains to be done to put this case in shape for trial. The Court does note that in order for the Court to try the case in a fair and expeditious manner, what the Court in fact needs from the parties, are proposed findings of fact and conclusions of law in non-argumentative form, in separately numbered paragraphs to enable the court to track the evidence as it's presented through testimony and exhibits.

Accordingly, in lieu of the requirements of the joint pre-trial statement, as previously provided for in the Court's orders, the parties will follow the following schedule and filings:

Within 30 days from today, plaintiff will file proposed findings of fact and conclusions of law in separately numbered paragraphs in non-argumentative form. Plaintiff shall also file as separate documents, a list of the exhibits, numbered for trial accompanied by Bench books of each separate exhibit, and as a separate document, a list of witnesses in the order plaintiff anticipates calling them for trial with a brief description of the nature of the testimony. The list will categorize between those witnesses who will testify live and those who will testify by deposition and who may testify. As to those witnesses who anticipate will testify by deposition, plaintiff will list those portions of the depositions he intends to offer to eliminate extraneous, redundant examination and argument.

Within 15 days thereafter or within 45 days, defendants shall file a joint statement of the proposed findings of fact and conclusions of law, with separately numbered paragraphs in non-argumentative form and to the extent practicable, incorporating the proposed findings of fact of plaintiff so the Court can determine which facts are in dispute and which are not.

The defendants shall also file a list of exhibits separately numbered for trial, accompanied by bench books, and to the extent practicable, so that it will eliminate duplication. The defendants shall also file a list of witnesses in the same form as required by the plaintiff, with a brief description. And lastly, defendants shall designate those portions of the deposition testimony which they want included as part of the record over and above the portions designated by the plaintiff.

Prior to trial, each party shall file a list of those exhibits to which they object from the opposite party and the basis for the objection.

Any issue of damages is severed. The trial will proceed on the issue of liability only.

If plaintiff fails to comply with this Order, defendants may feel free to move for appropriate sanction, including dismissal.