**Sylvia AVERBACH, Plaintiff,**

v.

**RIVAL MANUFACTURING CO., Defendant.**

**Civ. A. No. 85–2794.**

United States District Court, E.D. Pennsylvania.

May 7, 1990.

John J. O'Brien, III, Philadelphia, Pa., for plaintiff.

William T. Campbell, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

For the *third* time, plaintiff has filed a motion which seeks to have the first jury re-empaneled for the remaining phases of the trial of this action. For the *third* time, I will deny this request. In addition, I will require plaintiff's counsel to pay the costs, including reasonable attorney's fees, incurred by defendant in responding to this motion.

### I.

Plaintiff brought this suit alleging that defendant Rival Manufacturing Co. ("Rival") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and committed com-

mon law fraud in filing false answers to interrogatories in a prior products liability action between the parties which plaintiff lost.[1] I dismissed plaintiff's complaint in its entirety. *See* Memorandum Opinion and Order of November 18, 1985.

On appeal, the Third Circuit affirmed my dismissal of the RICO count and reversed, finding an alternative basis for jurisdiction, the dismissal of the common law fraud count. *See Averbach v. Rival Manufacturing Co.,* 809 F.2d 1016 (3d Cir.1987) (*"Rival I"*). Cross-petitions for writs of certiorari were denied. *See* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987) and 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987).

On remand, I bifurcated the question of whether the interrogatory responses were fraudulent from the issues of causation and damages. *See* Order of April 5, 1988. After a trial of the issue of fraud, the jury returned a verdict in favor of plaintiff. On the motion of Rival, I dismissed the jury.[2] Subsequently, I granted Rival's motion for a judgment notwithstanding the verdict, finding that "[p]laintiff's evidence of fraud was critically deficient of any relevant evidence upon which the jury could conclude Averbach relied in fact on the response." *See* Memorandum and Order of November 1, 1988 at 12.

The Third Circuit reversed the entry of a j.n.o.v. *See Rival II,* 879 F.2d at 1200–02. However, the Third Circuit affirmed the denial of plaintiff's motion to amend her complaint. *Id.* at 1202–03. Plaintiff's petition for writ of certiorari was denied on this issue. *See* —— U.S. ——, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

On remand, I denied Rival's motion for a new trial and the remaining grounds of the motion for a judgment notwithstanding the verdict. *See* Order of February 14, 1990. In addition, I denied plaintiff's initial motion to empanel the first jury for the remaining phases of the trial of this action.

Plaintiff argued that "[t]he jury that was presented with the *fraudulent* conduct [is] the one[ ] [which is] most qualified to award damages and in particular punitive damages for what is *outrageous* conduct not only in this case, but in several other cases." *See* Motion to Empanel First Jury at 2 (emphasis in original). Further, plaintiff argued that the only issue remaining is damages,[3] and that "[i]t would be a violation of the principle of judicial economy and the Seventh Amendment to retry the Fraud issue." *Id.* Defendant opposed plaintiff's motion.

In respect to this issue, the Third Circuit stated:

Over Averbach's objection, the district court agreed to Rival's proposal to try the case by means of a bifurcated trial, with the first phase directed only to the question of whether the interrogatory responses were fraudulent, and the second phase to the issues of causation and damages. We note that this division is not

---

1. *See Averbach v. Rival Manufacturing Co.,* Civil Action No. 78–1350 (a jury verdict in favor of defendant on June 5, 1981). No appeal was taken from the judgment. Subsequently, plaintiff filed a motion pursuant to F.R.Civ.Proc. 60(b) seeking a new trial based upon the alleged fraud. The district court denied this motion as untimely. The Third Circuit affirmed by judgment order. *See Averbach v. Rival Manufacturing Co.,* 779 F.2d 41 (3d Cir.1985). For a more detailed discussion of the facts and procedural history of the underlying litigation, see *Averbach v. Rival Manufacturing Co.,* 879 F.2d 1196, 1197–98 (3d Cir.1989) (*"Rival II"*).

2. At the time I dismissed the first jury, I made the following comments:

We have the problem with the admissibility of the hundred or so complaints of other fires. If [they are] not admissible in a trial involving causation and damages, then we may have a problem of prejudice to Defendant and I don't believe that could be cured by any cautionary instructions to the jury that tried the first phase of the case. We have some other problems which were outlined by [defense counsel].

The conclusion that I have reached is, to avoid prejudice and in the interest of fairness, I believe this jury should be discharged and the second phase should be tried before a different jury.

[Notes and Testimony, July 25, 1988 at 71].

3. I found that plaintiff improperly argued that only damages issues remained in the case. *See* Order of February 14, 1990 at ¶ 4 n. 2. Later, I denied plaintiff's motion for partial summary judgment on the issue of causation. *See* Order of April 6, 1990.

along the common line of bifurcation between liability and damages. Nonetheless, Fed.R.Civ.P. 42(b) expressly authorizes a separate trial of any separate issue under certain circumstances, subject to Seventh Amendment considerations.

*Rival II*, 879 F.2d at 1198. The court continued as follows:

> Our disposition makes it unnecessary for us to rule at this time on Averbach's contention that the district court's dismissal of the jury that heard the evidence in Phase One violated her right to a jury trial under the Seventh Amendment. Rival, of course, having proposed the bifurcation and the dismissal of the first jury cannot now be heard to object. Averbach will be able to obtain review of claims of error related to these issues if she is aggrieved by the final outcome of the proceedings.

*Id.* at 1202.

I concluded that plaintiff's request to empanel the first jury was "unworkable" and briefly outlined the reasons for my decision. First, I noted that plaintiff failed to cite any authority to support the recall of a previously discharged jury. Second, I expressed *"doubt"* that the same jurors would have sufficient recollection of the facts of this case to serve any useful purpose more than a year after the trial.[4] *See* Order of February 14, 1990 at ¶ 3. Third, I concluded that plaintiff's concern, in seeking to re-empanel the first jury, that a second jury would not possess sufficient information to assess punitive damages

against defendant was without merit.[5] *Id.* at ¶¶ 4–5. Finally, I rejected plaintiff's argument that the issues were so interwoven that they could not be submitted to the jury independently of each other, and concluded that plaintiff's seventh amendment concerns lacked merit. *Id.* at ¶ 6.

Shortly thereafter, plaintiff filed a motion for reconsideration of my order denying her request to re-empanel the first jury. On this occasion, plaintiff proposed to send a questionnaire to each juror that heard the first phase to determine whether they lived at the same address and if they recalled the case. Once again, plaintiff failed to present to the Court any authority which would support the recall of a previously discharged jury. In addition, plaintiff disregarded the other reasons given by the Court for dismissing the jury at the end of the trial of the first phase and failed to consider all the reasons given by the Court for denying the initial motion to re-empanel the first jury.[6] I denied this motion for substantially the same reasons as those stated in my February 14, 1990 order. *See* Order of March 15, 1990.

Less than a week later, plaintiff renewed her motion. The entire motion reads as follows:

> In the Court's Order of February 14, 1990, the Court stated in part:
>
>> "Even if [all] members of the jury could be located and reassembled, I doubt that the same jurors would have sufficient recollection of the facts of

---

4. Contrary to plaintiff's argument in the instant motion, it is difficult to conceive of how my expression of *doubt* concerning the ability of the jury to recollect the specific details of a trial, which took place in April 1988, constitutes an abuse of discretion. The concept that memories tend to fade over time is not a novel one. Notwithstanding this fact, this aspect of my February 14, 1990 order was only one factor upon which I relied in reaching my decision to deny plaintiff's motion to empanel the first jury.

5. I specifically stated:
   The second jury will be instructed regarding the outcome of the first phase of the trial. Further, the parties may prepare a stipulation of facts which can be read to the jury concerning the conduct of defendant. Also, the

trial of the causation issue will necessarily convey some of the flavor of defendant's conduct to the second jury. Finally, I will permit plaintiff to present, within reason, testimony relevant to the issue of punitive damages.
   *Id.* at ¶ 5 (footnote omitted).

6. It was obvious from plaintiff's motion that plaintiff focused on only one aspect—the fact that I expressed doubt that the jury could be reassembled and would have sufficient recollection of the trial of the first phase—of my February 14, 1990 order and ignored the substance of the remainder of the order. Also, plaintiff has repeatedly ignored the reasons given for the discharge of the first jury at the conclusion of the first phase of the trial of the action.

this case to serve any useful purpose." page [*sic* ] 2–3.

All of the jurors have been located and it would seem logical to assume that the first jury would know more about the July 1988 trial than a second jury who is presented only with the final pre-trial order for [the] second phase. The second phase would clearly be longer if the facts of the first phase have to be presented to the second jury.

Finally, it is an abuse of discretion to assume that the first jury does not have "sufficient recollection of the facts" without asking them if they remember the facts. The court has decided that the jury does not remember the case without asking the jury *any* questions.

The plaintiff request[s] that the Court reconsider this unusual circumstance and empanel the first jury.

Once again, plaintiff's motion fails to cite any authority. Moreover, plaintiff's motion fails to set forth any new information which would justify a change in my previous rulings. In addition, as pointed out by defendant's response to plaintiff's motion, plaintiff emphasizes only one of several points set forth in the Court's order of February 14, 1990. Finally, plaintiff's assertion that the second jury would be presented only with a final pretrial order misstates the manner in which the second phase would be conducted. Indeed, my order of February 14, 1990 specifically states that plaintiff would be permitted to present certain testimony, in addition to the presentation of stipulated facts which will be read to the jury, concerning the damages issues even though this evidence might be duplicative of the evidence presented in the first phase. The mere fact that the second phase might be slightly longer because of this is not a sufficient

basis for the granting of plaintiff's unusual and extraordinary request. Therefore, plaintiff's motion appears to totally lack merit.[7]

## II.

Stated simply, plaintiff's counsel has submitted a meritless motion to the Court which amounts to nothing more than a waste of time and resources. Having received this Court's ruling on both plaintiff's motion to empanel the first jury and initial motion for reconsideration, plaintiff's counsel has acted unreasonably and vexatiously in filing a second motion for reconsideration without an arguably meritorious basis. Thus, I conclude from all the circumstances that plaintiff's counsel has acted in bad faith, and I will impose sanctions upon plaintiff's counsel in an amount equal to costs, including reasonable attorney's fees, incurred by defendant in responding to the instant motion.

Section 1927[8] of Title 28 of the United States Code provides as follows:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

This section is designed as a sanction against vexatious litigation practices and is intended to require attorneys to satisfy the costs attributable to their misconduct personally. *Piljan v. Michigan Dep't of Social Services,* 585 F.Supp. 1579, 1583 (E.D. Mich.1984). This form of sanction is designed to discourage improper litigation practices and advocacy designed to burden

---

**7.** I believe that it is of some significance that plaintiff's counsel has apparently located and contacted the members of the dismissed jury *without my knowledge and approval.*

**8.** If section 1927 were deemed not to apply to this case, I would still impose sanctions under Rule 11 of the Federal Rules of Civil Procedure or utilize my inherent power to impose sanctions in this instance. *See NASCO, Inc. v. Calcasieu Television and Radio, Inc.,* 894 F.2d 696,

702 (5th Cir.1990); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (under exception to prevailing rule that a prevailing party is not entitled to recover attorney's fees, the court has the inherent power to impose attorney's fees upon a losing party that has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons").

an opponent without chilling aggressive litigation concerning colorable claims. *See Matter of Capitol–York Construction Corp.*, 52 B.R. 317 (Bankr.S.D.N.Y.1985).

Under certain circumstances, the filing of a frivolous motion may constitute grounds for the assessment of attorney's fees against the moving party. *See, e.g., North American Foreign Trading Corp. v. Zale Corp.*, 83 F.R.D. 293, 297 (S.D.N.Y. 1979). In fact, if arguments made in support of a motion for reconsideration are adjudged frivolous and in bad faith, then an award of attorney's fees in favor of the prevailing party may be warranted. *See Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860–61 (9th Cir. 1986).

I conclude that the instant motion is frivolous and constitutes an unreasonable and vexatious litigation practice which has unnecessarily multiplied these proceedings. For this reason, defendant should not be required to bear the additional expense of opposing this motion. This is especially true when defendant has already previously opposed two identical motions. Under the circumstances, the filing of the instant motion constitutes bad faith. It is inconceivable that an attorney, acting in good faith, would renew a motion that has been twice denied without offering to the Court any authority which would justify a ruling different from that previously rendered. Therefore, I will sanction plaintiff in the amount equivalent to the costs and attorney's fees incurred by defendant. In keeping with the language of 28 U.S.C. § 1927 and the general principle that sanctions should not be imposed upon a blameless litigant, *see Carter v. Albert Einstein Medical Center*, 804 F.2d 805, 807 (3d Cir. 1986), I shall further order that plaintiff's counsel shall be personally responsible for paying this amount.

### III.

For the reasons stated above, plaintiff's motion for reconsideration of my March 15, 1990 order is denied. Further, plaintiff's counsel shall be required to reimburse defendant for the costs, including reasonable attorney's fees, incurred in responding to this motion.

